NANCY A. CASPER, APPELLEE, v. CHARLES T. CASPER, APPELLANT.

254 N. W. 2d 407

Filed June 8, 1977. No. 41029.

Peter Toll Hoffman, for appellant.

Edna R. Atkins, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

The respondent Charles T. Casper appeals from the order of the District Court denying his application for an order requiring the petitioner Nancy A.

O'Tool, formerly Casper, to make available for transportation to the Nebraska Penal and Correctional Complex the five children of the parties, who range in age from 9 to 11½ years.

The respondent was convicted of murder in the commission of a robbery and is serving a life sentence in the complex. See State v. Casper, 192 Neb. 120, 219 N. W. 2d 226.

The parties were divorced after the defendant's conviction and sentence. In the decree of November 6, 1974, the court awarded custody of the minor children to the petitioner "subject to reasonable rights of visitation by the respondent."

The petitioner, in response to the respondent's application, requested the visitation rights of the respondent be terminated.

The trial court denied the applications of petitioner and respondent. The respondent appeals.

The respondent was incarcerated in the penal complex in December 1973 and shortly thereafter, in February 1974, his children began visiting him. The visits continued on a monthly or bimonthly basis until November 1975. The petitioner then refused to take the children to the penal complex and further refused to make them available to her mother who had been taking the children when the petitioner did not.

The respondent asserts here that the visitation privilege in the decree is meaningless unless his application is approved. There is no contention by the respondent that the petitioner should be responsible for the transportation of the children or the cost of such transportation.

The respondent contends that his incarceration is not an "exceptional circumstance" as would justify the denial of a right to visitation.

The petitioner and Ronald O'Tool were married on June 6, 1975. The children of the parties have since made their home with their mother and her hus-

band. The respondent is obviously unable to, and has not, contributed anything to the support of his children.

The petitioner here argues that the court did not terminate the respondent's visitation rights by limiting all visitation to the home of the petitioner and that such a requirement is reasonable. The requirement of visitation in a specified place, in the company of other persons, may indeed, in a given case, be reasonable, but each such case assumes a non-custodial parent free to travel to such place. The order effectively cuts off the respondent's visitation with his children until such time as the order might be modified or the children are old enough to provide their own means of transportation.

The mere fact of incarceration is not a sufficient justification for the denial of the right of visitation even though the same may be effectively exercised only by visitation at the institution. M__L__B__ v. W__R__B__ (Mo. App., 1970), 457 S. W. 2d 465; Chadwick v. Chadwick, 275 Mich. 226, 266 N. W. 331.

In the determination of custody and visitation matters, the primary concern is the best interests of the children. § 42-364, R. S. Supp., 1976; Young v. Young, 195 Neb. 163, 237 N. W. 2d 135.

The question then is, simply, is it in the best interests of the children that they be allowed to visit the respondent in the penal complex?

In support of his application, the respondent offered the evidence of the petitioner's mother, Mrs. Orville Camden. Mrs. Camden, who frequently transported the children to the penal complex and remained with them during the visitation period, testified that the children seemed anxious to see their father, talked with him, and appeared not at all disturbed by the surroundings.

Tim Shea, a psychologist at the penal complex, in response to the question as to whether "there is anything in the environment of the visiting area of the

penitentiary that would unduly disturb or upset children visiting there?'', testified: ''No, nothing that I can think of. I think it is always difficult for children to be away from their parents and to be able to see their parents again * * *. I think it is very good for kids really.'' Mr. Shea was of the opinion that the visitation was of benefit to the children and not against their best interests. Mr. Shea testified as an expert and was not personally acquainted with the Casper children.

The petitioner testified that she met continuing resistance on the part of the two eldest children as the visitations progressed. Finally she was forced to tell them that they must accompany their grandmother whether they wished to do so or not. The two elder children expressed the same view in conversations with the trial judge.

The petitioner stated that after each visitation the children's attitude would deteriorate; and that the children expressed the view that they were not required to obey her or her new husband, and that their father, the respondent, would ''fix that, so they wouldn't get any punishment.'' She also stated that after termination of the visits, their grades and attitudes improved. The petitioner offered the opinion as to why the respondent wants visitation continued: ''Because I think in a way, he still thinks he is married to me and another reason is that he never cared for the kids in the beginning. There never was anything before the divorce, before he went to prison. He never had any time for me *or the kids.''* (Emphasis supplied.)

The petitioner further testified about her alienation with her mother: ''She was too attached to my ex-husband'' and, at least by inference, suggests that some of the problems of the children are to be attributed to her and the respondent.

The trial court, in denying the respondent's application, placed great weight on the difficulty inherent

in the establishment of the petitioner's new marriage, the pressure placed on the petitioner and her husband by the attitudes of the children after visitation, the petitioner's belief that her mother was contributing to those attitudes, and the court's feeling that the institutional setting was against the best interests of the children.

The trial court further indicated that the best interests of the children lay in the establishment of a stable home environment, free of unsettling influences, rather than in the continued disruptions the court felt were caused by the visitations. The trial court indicated that the visitations were of benefit to the respondent but not of value or in the best interests of the children.

In cases involving determination of visitation privileges of a parent with minor children, findings of a trial court, both as to an evaluation of the evidence and as to the matter of visitation privileges, will not be disturbed on appeal unless there is a clear abuse of discretion or the findings are contrary to the evidence. Such findings are subject to review by this court de novo on the record. King v. King, 196 Neb. 289, 242 N. W. 2d 632.

The trial court's findings are supported by the record. We do not find an abuse of discretion in limiting the visitation rights. We do point out that as orders relating to custody and support are open to change on a proper showing of change of circumstances, so is the trial court's order limiting visitation.

AFFIRMED.