*In re* MARRIAGE OF ROBERT E. HANSON, JR., Petitioner-Appellant, and CATHERINE J. HANSON, Respondent-Appellee.

Fifth District   No. 82—246

Opinion filed February 14, 1983.

Wolff, Jones, Lawder & Elmore, of Murphysboro, for appellant.

William G. Schwartz, of Hunter and Schwartz, of Carbondale, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Petitioner, Robert E. Hanson, Jr., appeals from judgment of the circuit court of Jackson County granting permanent custody of his son to respondent, Catherine J. Hanson.

The parties were married in Illinois in August of 1977. Shortly thereafter Robert entered the military and the couple resided in Florida where he was stationed. Their only child, James Michael, was born in October 1978. In June of the next year, Robert received notice of a transfer to Texas. Prior to the move, Catherine returned to Illinois. Apparently, James had been living with Robert's grandmother; so, Catherine returned to get him. When the grandmother refused to let her have the child, Catherine instituted legal proceedings. The dispute was settled, however, when Robert joined Catherine in Illinois. The parties then decided that Robert should go to Texas alone and secure housing. He was to send money so that Catherine and James could join him later. Although Robert did as he promised, Catherine, fearing

for her and the child's safety, returned to Florida.

Robert saw James again on leave in October of 1980 and after his discharge in February, James lived with his father in Illinois until mid-April. Once again, Catherine came for the child and without Robert's knowledge returned to Florida.

Since August both parties have resided in Illinois. Robert lives in a two-bedroom trailer with an unmarried adult female. Catherine the mother of two children in addition to James, lives with them in a two-bedroom apartment she shares with her sister.

Robert filed for dissolution of the marriage, seeking permanent custody of his son. The parties later entered into a marital settlement agreement in which they agreed that the best interests of the child would be served by placing him in their joint custody. Robert filed an amended petition incorporating the parties' agreement. The trial court granted dissolution on September 29, 1981, but declined to accept the parties joint custody agreement finding it had insufficient evidence with which to make a decision. Temporary custody was awarded to Catherine, and Robert was allowed reasonable visitation on an equal basis.

A second hearing was held April 2, 1982, and permanent custody was awarded to Catherine. Robert was given visitation rights every other weekend, Wednesday evenings, on specified holidays and for three weeks during summer. The court precluded overnight visitation because of Robert's living arrangement.

Robert alleges on appeal that the court improperly awarded temporary custody to Catherine; that permanent custody was not determined in accordance with section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 602); and that his visitation rights were improperly restricted. Catherine seeks recovery of attorney fees and costs incurred in defense of this appeal.

■■ Robert argues that the trial court's decision awarding Catherine temporary custody was erroneous and as a result, it clouded the custody issue in the mind of the court at the later hearing, contributing to the court's decision to award Catherine permanent custody. He claims that because there was no evidence presented of Catherine's suitability to have temporary custody, the court relied on the doctrine of tender years to make its decision. The doctrine recognizes a presumption in favor of the mother in a contest for custody of children of tender years. The presumption is no longer accepted law. *In re Custody of Switalla* (1980), 87 Ill. App. 3d 168, 408 N.E.2d 1139.

The Illinois Marriage and Dissolution of Marriage Act provides for

temporary custody orders. (Ill. Rev. Stat. 1981, ch. 40, par. 603.) The court's order in this case stated, "temporary custody of the minor child, James Michael Hanson, be awarded to [Catherine] who has assumed primary responsibility for the custody of the minor child and that reasonable visitation and temporary custody on an equal basis with that of [Catherine] should be awarded to [Robert] who has also assumed considerable responsibility for the custody for [*sic*] the minor."

We read the court's order as merely maintaining the status quo of the parties until the permanent custody hearing was held, and we find the record devoid of evidence that the court was influenced by the temporary custody decision in awarding permanent custody.

■ Robert's second argument is that the trial court's decision to award permanent custody to Catherine was not made in accordance with the best interests of the child as required by section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 602).

We emphasize at the outset that the court is not required to recite the factors of section 602 in making a decision. (*In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 708, 395 N.E.2d 208, 210.) The court's judgment in this case indicates it gave thoughtful consideration to the relevant factors. It considered the wishes of the parents. The judgment observes that Catherine fought for the right to have her child with her in the past. It notes that Catherine was on her own much of the time and often without support from Robert. Although Catherine chose not to reside with Robert in Texas, she indicated she did so because she feared for the child's safety. The judgment also takes cognizance of the violent behavior of the parties. Although each party blamed the other for initiating such occurrences, the court specifically found that Robert had been violent with Catherine during the period of temporary custody authorized by the court. The court also discussed Robert's current living arrangement. Based on its impropriety (Ill. Rev. Stat. 1981, ch. 38, par. 11—8) and the supreme court decision in *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, *cert. denied* (1980), 449 U.S. 927, 66 L. Ed. 2d 155, 101 S. Ct. 329, it determined that the arrangement did not provide a healthy atmosphere in which to raise a child. Evidence as to the child's relationship with others and of the child's adjustment to his environment was abundant on both sides. There was no evidence of the child's wishes because of his age, and both parents were considered healthy physically and mentally.

Bearing in mind the court's articulate finding of facts and its su-

perior familiarity with the facts and the parties involved, we cannot conclude that the court's decision was an abuse of discretion. We note that the General Assembly added section 603.1 to the Act by Public Act 82—1002, effective September 17, 1982. (1982 Ill. Leg. Serv. 2630 (West).) This amendment provides that upon agreement of the parties, the court may award joint custody if it determines joint custody to be in the best interest of the child. Here, it is apparent that the court found that joint custody was not in the best interest of James, and had this new section of the Act been in effect, the trial court's decision would not have been different.

Finally, Robert argues that the court applied a conclusive presumption of harm to the child based on Robert's living arrangement. He believes the presumption was applied to the exclusion of other relevant evidence to deny him permanent custody of his son. Our foregoing analysis of the court's decision illustrates, to the contrary, that the court carefully considered all the evidence as required by section 602 (Ill. Rev. Stat. 1981, ch. 40, par. 602). Robert's living arrangement was one factor among many in the court's decision.

Robert also argues that his visitation rights were improperly restricted. Robert was denied the right to overnight visitation as long as another woman resided with him outside of marriage. Overnight visitation was allowed at the home of the child's paternal grandfather.

■ Section 607 of the Illinois Marriage and Dissolution of Marriage Act provides that the noncustodial parent of the child is entitled to reasonable visitation. (Ill. Rev. Stat. 1981, ch. 40, par. 607.) To restrict visitation rights the court must find that the child's physical, mental, moral or emotional health is endangered. (*In re Marriage of Solomon* (1980), 84 Ill. App. 3d 901, 906, 405 N.E.2d 1289, 1293.) The endangerment standard is an onerous one. (*In re Marriage of Neat* (1981), 101 Ill. App. 3d 1046, 1048, 428 N.E.2d 1093, 1095.) In *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, *cert. denied* (1980), 449 U.S. 927, 66 L. Ed. 2d 155, 101 S. Ct. 399, a custody modification case, the supreme court found that open cohabitation between unmarried persons can endanger a child's moral, mental and emotional health. The court felt that a parent's disregard for existing standards of conduct might encourage the child to ignore them and could influence the child to engage in similar conduct. (78 Ill. 2d 337, 346, 400 N.E.2d 421, 424.) However, the court made exception for the case where the parent has plans to marry and there is no indication of future misconduct. See *Rippon v. Rippon* (1978), 64 Ill. App. 3d 465, 381 N.E.2d 70, cited with approval in *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 348, 400 N.E.2d 421, 425, *cert. denied* (1980), 449 U.S. 927,

66 L. Ed. 2d 155, 101 S. Ct. 399.

■■ Applying these principles to the present case we conclude that the restriction was not supported by the evidence. Because James is of such a young age it is difficult to perceive how he could be influenced by his father's choice of living arrangements, as was the concern in *Jarrett*. Also, Robert and the woman with whom he lived both testified they had plans to marry soon.

Catherine moved in the trial court for an order requiring Robert to pay her attorney fees and costs incurred in the defense of this appeal. The motion has been taken with the case.

Section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act provides for the recovery of attorney fees and costs incurred in the defense of an appeal from any judgment under the Act. (Ill. Rev. Stat. 1981, ch. 40, par. 508(a)(3).) Although the former divorce act (Ill. Rev. Stat. 1975, ch. 40, par. 16) authorized the trial court to award attorney fees "during the pendency of the appeal," section 508(a)(3) has no comparable provision. Without explicit statutory authority, the trial court lacks jurisdiction to award fees once the jurisdiction of the appellate court has attached. (*In re Marriage of Wright* (1980), 92 Ill. App. 3d 708, 415 N.E.2d 1196, *vacated as moot* (1982), 89 Ill. 2d 498, 434 N.E.2d 293; *Fox v. Fox* (1978), 56 Ill. App. 3d 446, 371 N.E.2d 1254.) Thus we remand the cause to the trial court for a hearing on the question of attorney fees.

For the reasons stated, the judgment of the circuit court of Jackson County granting Catherine J. Hanson permanent custody of James Michael Hanson is affirmed. The restriction on Robert E. Hanson's visitation rights is reversed and the cause remanded for a hearing on the issue of attorney fees.

Affirmed in part; reversed in part and remanded.

HARRISON, P.J., and KASSERMAN, J., concur.