LINDA JO GRIFFITHS, Plaintiff-Appellee, *v.* RICHARD J. GRIFFITHS, Defendant-Appellant.

Fourth District    No. 4—84—0088

Opinion filed August 28, 1984.

Richard J. Griffiths, of Menard, for appellant, *pro se.*

Charles J. Speta, of Springfield, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals from the order of the trial court which denied his petition for modification of a decree of dissolution to order visitation rights with his son at the Menard Correctional Center, where defendant is presently incarcerated. The decree of dissolution provided for the right of reasonable visitation.

The parties were divorced on October 28, 1976. Custody of their only child, who was born November 8, 1971, was awarded to plaintiff, with defendant given reasonable rights of visitation. Defendant was subsequently convicted of the offenses of murder, aggravated arson, and arson, and sentenced to 40 years' imprisonment for murder and 30 years' imprisonment for aggravated arson. *People v. Griffiths* (1983), 112 Ill. App. 3d 322, 445 N.E.2d 521.

The defendant's petition for visitation rights requested that his parents, the paternal grandparents, be allowed custody of his son on the first and last Sundays of each month to transport him to the facility where defendant is incarcerated for the purposes of visitation, or "for such other and further relief that may be just and proper." The petition stated that there are facilities at Menard to accommodate the visits of young children, that children of 12 years of age and younger do visit relatives at Menard, and that his son has been transported by defendant's mother to Menard on two occasions for visitation purposes. The common law record reflects that the defendant was present in person and with appointed counsel at the hearing on his petition. Plaintiff appeared *pro se.* Testimony was taken and the trial judge entered the following letter opinion:

> "It is the Court's decision that [defendant's] petition for an order directing [plaintiff] to allow the grandparents of Jamie Michael Griffiths to take custody of Jamie from 7:00 a.m. until 7:00 p.m. two Sundays per month for the purpose of transporting him to Menard, Illinois, for visitation should be denied.
>
> The facts in this case appear to differ substantially from those in [*Frail v. Frail* (1977), 54 Ill. App. 3d 1013, 370

N.E.2d 303] relied upon by [defendant]. The court found in *Frail* that a strong parent-child relationship had been established between the children and their mother. The mother had had custody of the children, ages six and eight, at the time of her divorce in 1974 until she was incarcerated in 1976. She petitioned the Court for visitation rights within seven months after her conviction.

In this case, [the parties] were divorced when Jamie was just short of five years old. [Plaintiff] was given custody of Jamie, and there was not even any provision for [defendant] to pay support for Jamie. The evidence indicates that [defendant] visited with Jamie several times per month in 1977 and 1978, but moved to Phoenix in 1979, and has been in custody since January, 1980.

[Defendant] has apparently seen Jamie twice since January, 1979. According to [plaintiff's] testimony [defendant] never called or wrote to Jamie, sent him birthday presents or cards or wrote him letters to the present date. [Defendant] testified that he has written 'a couple of letters' to his son over the past year, but has not telephoned him although [defendant] has telephone privileges.

The only evidence we have as to Jamie's desire in this matter is that he does not wish to make the trip.

Jamie's desire is not controlling on the Court; his wishes concerning the matter are certainly relevant, however, in determining whether such a bond exists between father and son as to render it in the best interest of the minor to be transported from Springfield to Menard twice a month. The evidence does not indicate that any such bond exists here."

The court thereupon denied defendant's petition.

Section 607 of the Illinois Marriage and Dissolution of Marriage Act, effective October 1, 1977, (Ill. Rev. Stat. 1983, ch. 40, par. 607) states a strong public policy designed to preserve the relationship of parent and child, using the language:

"(a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health." (Emphasis added.)

Prior to the adoption of the Act, our courts had recognized a public policy substantially comparable in strength without, however, fixing the legislative standards that when considering modifications of the manner of visitation the test was to be the "best interests of the

child," as distinguished from those instances where visitation was totally denied, or obviously restricted when the legislative standard became the endangerment of the child's welfare.

The courts have interpreted the stated legislative policy as it has been explicated in the Historical and Practice Notes of section 607 that there be a healthy and close relationship between parent and child and "that visitation privileges should not be awarded or withheld as a punishment or reward to either parent" (Ill. Ann. Stat., ch. 40, par. 607, Historical and Practice Notes, at 70 (Smith-Hurd 1980)). While decided under the law effective prior to the date of the Act, in *Frail v. Frail* (1977), 54 Ill. App. 3d 1013, 370 N.E.2d 303, the court, using the standard of the "best interests of the children," determined that the trial court did not abuse its discretion in directing that the children be permitted to visit their mother following a conviction of murder. There, the record shows a strong relationship between the mother and children and assumed visiting conditions which would not alarm or oppress the children. In effect, the court held that imprisonment of a parent does not, of itself, require that visitation between child and parent be barred or restricted. Such view has been expressly stated in courts of neighboring States. (*Casper v. Casper* (1977), 198 Neb. 615, 254 N.W.2d 407; *McCurdy v. McCurdy* (1977), 173 Ind. App. 437, 363 N.E.2d 1298.) On the other hand, we are not persuaded that the parent's imprisonment creates a *per se* right to visitation at a prison or at a particular place chosen solely by the noncustodial parent.

In 1971, the father was awarded the right of reasonable visitation in the customary manner and contemplation of the usual decree concerning child custody. The exercise of that right by the father is interrupted or limited through circumstances which are not under the control of either the custodial parent or the court. The father is the one seeking the change or deviation in the manner of visitation contemplated at the time of entering the decree concerning custody, and it is the father who effectively is asking affirmative relief.

■ The Illinois courts have held that where the proceeding is by a custodial parent to restrict or deny the visitation, the burden is upon the custodial parent to prove by a preponderance that the visitation then provided endangers the welfare of the children. (*In re Marriage of Neat* (1981), 101 Ill. App. 3d 1046, 428 N.E.2d 1093.) However, where the noncustodial parent seeks to modify visitation rights which have been originally granted in the dissolution decree, the burden of proof is upon such parent to show that the modification is in the "best interest" of the child or children. *Coons v. Wilder* (1981), 93

Ill. App. 3d 127, 416 N.E.2d 785.

■ No transcript of the January 23 hearing has been made part of the record on appeal; it appears from the common law record that the trial judge denied defendant's request for a free transcript, which request was based upon his indigency. Neither has the defendant nor his trial counsel presented an agreed statement of facts pursuant to Supreme Court Rule 323(d) (87 Ill. 2d R. 323(d)). It is generally held that it is the burden of the appellant to present a record sufficiently complete to permit review of the error complained of, and doubts arising from the presentation of the record will be resolved against the appellant. Issues of the sufficiency of the evidence cannot be reviewed in the absence of a report of proceedings, and in the absence of a contrary indication in the record, the trial court is presumed to act correctly. *Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1042, 389 N.E.2d 182, 185.

■ As it appears that the trial court applied the best-interests-of-the-child standard, as required by section 607(c) of the statute, in ruling against the defendant father's petition for visitation at the place of his incarceration, we find no basis for reversal. We therefore decline to substitute our judgment of reasonable visitation for that of the trial court.

In reaching this result we have considered the decisions of our sister jurisdictions relating to post-dissolution visitation for noncustodial parents in imprisonment. See *Chadwick v. Chadwick* (1936), 275 Mich. 226, 266 N.W. 331; *M.L.B. v. W.R.B.* (Mo. App. 1970), 457 S.W.2d 465; *Casper v. Casper* (1977), 198 Neb. 615, 254 N.W.2d 407; *Caynor v. Caynor* (1982), 213 Neb. 143, 327 N.W.2d 633; *McCurdy v. McCurdy* (1977), 173 Ind. App. 437, 363 N.E.2d 1298; and *Garcia v. Garcia* (Ind. 1981), 425 N.E.2d 220.

Affirmed.

GREEN and WEBBER, JJ., concur.