DONNA WOODS, Respondent-Appellant, v. WILLIAM WOODS, Petitioner-Appellee.

Fifth District   No. 5—85—0520

Opinion filed October 3, 1986.

William R. Haine, of Wood River, for appellant.

William Woods, for appellee, *pro se*.

JUSTICE HARRISON delivered the opinion of the court:

Respondent, Donna Sue Woods, appeals from an order of the circuit court of Madison County granting petitioner, William Woods, visitation with the divorced couple's son, Travis, at the Graham Correctional Center in Hillsboro where petitioner is incarcerated. We reverse and remand.

Petitioner and respondent were married on April 18, 1979. Their son, Travis, was born on October 13, 1980. The marriage was dissolved on August 12, 1982, and the final judgment of dissolution en-

tered on that date incorporated an agreement by the parties which provided that respondent be awarded custody of Travis, with petitioner to have "reasonable visitation." Several months after the judgment of dissolution was entered, petitioner began serving a term of imprisonment. He was first placed at the Menard Correctional Center, then was later moved to the Graham Correctional Center in Hillsboro. On June 28, 1984, proceeding *pro se*, he filed a petition asking that he be allowed visitation with Travis at Graham. The court granted this petition in an order entered on December 19, 1984. This order was subsequently set aside after respondent showed she had not received notice of the proceedings. After respondent received proper notice, a hearing was held on the petition on July 25, 1985. A guardian *ad litem* was appointed to represent the interests of the child.

At the hearing, petitioner testified he was arrested several months after the divorce and had been incarcerated for 27 months. The record in the trial court does not indicate the precise crime or crimes for which petitioner was incarcerated. Petitioner did testify, "I felt remorse for what I did. *** I was sorry for what I did." He also testified that he was due to be released from prison in February of 1987.

Petitioner stated that he exercised his visitation rights with Travis every week prior to his incarceration. He explained that he had not asked for visitation during the early part of his incarceration because he was being held at the Menard Correctional Center where he felt the environment was not as good as the environment at Graham. Petitioner claimed his son would not have to know that he was going to a prison to visit his father and suggested that Travis could be told he would be visiting his father at college because petitioner is in fact taking vocational and college courses at the prison. He further stated that there is a visiting room at Graham where he can meet with his son. However, he also testified that a guard is always present in the visiting room.

Petitioner's father, William Woods, Sr., testified that he and his wife visit petitioner at the prison once a month. He stated that there is a fence around the facility, and that visitors are searched before being admitted into the prison. A security guard is stationed at the doors leading into the visiting room, and a guard is stationed inside the room. Petitioner's father also testified the visiting room was "real nice," and that if a person walked into the room blindfolded and then had the blindfold removed, it would not be possible to tell the room was part of a prison. He stated that there is a box of toys in the visiting room for children who are present. The elder Woods also testified

that he and his wife are willing to bring Travis to the prison to visit petitioner once a month. He stated he had not seen his grandson since the spring of 1983.

On July 25, 1985, the trial court granted the petition to modify the judgment of dissolution, and ordered that petitioner's parents be allowed visitation "one day per month during which they may transport the minor Travis to the Graham Correctional Center to visit William Woods." This court subsequently granted respondent's motion to stay the order pending this appeal.

■ The petition for modification of visitation is governed by section 607(c) of the Illinois Marriage and Dissolution of Marriage Act (the Act), which states: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health." (Ill. Rev. Stat. 1983, ch. 40, par. 607(c).) When a noncustodial parent seeks to modify visitation rights, that parent has the burden of showing the modification is in the best interest of the child or children. (*Griffiths v. Griffiths* (1984), 127 Ill. App. 3d 126, 129, 468 N.E.2d 482, 485.) To restrict visitation, the burden is upon the custodial parent to prove the visitation endangers the welfare of the child. 127 Ill. App. 3d 126, 129, 468 N.E.2d 482, 485.

■ Initially, the petition in the case *sub judice* must be analyzed under the best-interest standard of section 607(c). Petitioner was originally awarded the right of reasonable visitation. The exercise of that right by petitioner has been interrupted by circumstances which are not under the control of either the custodial parent or of the court. Petitioner is the one seeking the change in the manner of visitation contemplated at the time of entry of the decree, and it is petitioner who effectively is asking for affirmative relief. (See *Griffiths v. Griffiths* (1984), 127 Ill. App. 3d 126, 129, 468 N.E.2d 482, 484-85.) However, we realize that to deny this petition for modification would in effect deny petitioner all visitation rights during his period of confinement. Under section 607(c) of the Act, visitation rights cannot be restricted unless the court finds that the visitation would "endanger seriously the child's physical, mental, moral or emotional health." (Ill. Rev. Stat. 1983, ch. 40, par. 607(c).) We find that under both standards of the statute, petitioner should not be granted visitation rights at the prison.

■ Imprisonment of the noncustodial parent does not create a *per se* right to visitation at a prison or at a particular place chosen by

the noncustodial parent. (*Griffiths v. Griffiths* (1984), 127 Ill. App. 3d 126, 129, 468 N.E.2d 482, 484.) The Fourth District affirmed orders denying petitions for visitation at penal institutions in *Griffiths v. Griffiths* and the companion case of *In re Marriage of Griffiths* (1984), 127 Ill. App. 3d 123, 468 N.E.2d 485. Petitioner, however, relies upon *Frail v. Frail* (1977), 54 Ill. App. 3d 1013, 370 N.E.2d 303, where visitation at a prison was allowed to an incarcerated mother. Even though the mother was in prison upon a conviction of murder, the appellate court found that because she had a strong relationship with the children and had been their custodial parent prior to being incarcerated, and because visitation would take place in a non-prison environment in the absence of close scrutiny by guards, that the trial court had not abused its discretion in allowing visitation at the prison. (54 Ill. App. 3d 1013, 1016, 370 N.E.2d 303, 305.) While *Frail* has been interpreted as holding that imprisonment of a parent does not, of itself, require that visitation between parent and child be barred or restricted (*Griffiths v. Griffiths* (1984), 127 Ill. App. 3d 126, 129, 468 N.E.2d 482, 484), we agree with the holding in *Griffiths v. Griffiths* that the parent's imprisonment does not create a *per se* right to visitation at a prison. 127 Ill. App. 3d 126, 129, 468 N.E.2d 482, 484.

In the present case, petitioner's son was four years and nine months old at the time of the hearing below. Unlike the situation in *Frail*, petitioner was not the custodial parent prior to his incarceration, and he presented no evidence of a strong relationship with the child. We do not mean to say that, because there is no evidence of a close relationship presently, the child should never have the opportunity to develop such a relationship. Whether and to what extent petitioner should have visitation rights after his release from prison should be determined under the circumstances at that time. Meanwhile, we believe that, because development of a parent-child relationship is in itself a difficult process, the child should not have to be faced with the additional burden of attempting this process in a prison environment. While the prison has a visiting room, the fact that a prison has facilities for visits with children in a nonprison atmosphere does not dictate that visitation be granted in all cases. (*In re Marriage of Griffiths* (1984), 127 Ill. App. 3d 123, 126, 468 N.E.2d 485, 487.) Furthermore, there is always a guard present in the visiting room, and guards are present in the surrounding area. To get to the visiting room, the child would have to enter the prison grounds, be searched by guards, and observe the general prison environment. We do not believe petitioner will be able to convince his son that he is

visiting his father at college as petitioner suggests.

For these reasons, we conclude that visitation at the prison is not in the child's best interest and that it would endanger seriously the physical, mental and emotional health of this young child. (Ill. Rev. Stat. 1983, ch. 40, par. 607(c).) While petitioner may view our decision denying visitation as harsh, we are mindful that he is due to be released from prison in a matter of months.

Thus, we reverse the order of the trial court and remand the cause with directions to enter an order denying petitioner visitation at the prison. We note that the trial court's order effectuated visitation with petitioner by allowing petitioner's parents to have visitation one day a month and allowing them to bring the child to the prison. We are reversing the order in its entirety because the purpose of the order was to provide petitioner with visitation. However, our decision does not affect the grandparents' rights under section 607(b) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 607(b)).

For the foregoing reasons, the order of the circuit court of Madison County is reversed and the cause remanded with directions.

Reversed and remanded with directions.

KASSERMAN, P.J., and KARNS, J., concur.