*In re* MARRIAGE OF JOHN HARTLEY LEWIS, Petitioner-Appellee, and SYLVIA ELAINE FARRIS LEWIS, Respondent-Appellant.

Fifth District   No. 5—88—0017

Opinion filed August 24, 1989.

Morris Lane Harvey and Heide A. Hoffee, both of Law Offices of Morris Lane Harvey, of Fairfield, for appellant.

A. Courtney Cox, of Hart & Hart, of Benton, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Petitioner, John Lewis, filed a motion in the circuit court of Franklin County to restore visitation, his visitation rights having previously been temporarily modified, and respondent, Elaine Lewis Conaughty filed a motion to restrict visitation. After a hearing, the trial court denied Ms. Conaughty's motion to restrict visitation, granted Mr. Lewis' motion to restore visitation, and ordered that the child, David Lewis, cease all visits to any psychologist or psychiatrist until further order of the court. The trial court subsequently entered an award of attorney fees in favor of John Lewis, finding that Elaine Conaughty's actions preventing John Lewis from exercising his visitation rights were unjustified. Elaine Conaughty appeals both orders.

The parties were married on April 22, 1977, and divorced on February 25, 1980. David Lewis was born on January 17, 1979. The dissolution decree awarded both parents joint custody of David, Elaine Lewis having physical custody nine months per year and John Lewis having physical custody for the other three months, as well as visitation privileges.

Prior to November of 1985, David Lewis stayed at the home of John Lewis' parents during the time granted Lewis for visitation and during the summer months. The record indicates that John Lewis lived with his parents during that time except when he was attending college. John Lewis married his present wife, Patty, in November of 1985. Since that time, David stayed with John and Patty Lewis during weekend visitation and during the summer. Beginning in September of 1986, Elaine Conaughty (Elaine Lewis had remarried in 1980) began noticing a radical change in David's behavior. He was moody, had tantrums, and frequently became violent. These episodes coincided with John Lewis' scheduled visitation, and David indicated that he did not want to go for the visitation.

On November 17, 1986, John Lewis filed a petition for rule to show cause and a petition to modify physical custody alleging that Elaine Lewis was denying him visitation, that Elaine Lewis and her husband were having marital difficulties which were having a detrimental impact on David, and that David did not get along with the other children from Elaine Lewis' second marriage. Elaine Lewis filed a counterpetition alleging that David did not want to stay with John

Lewis during his summer visitation, that David did not get along with Patty Lewis, and that the visitations with John Lewis were causing David severe emotional distress.

The parties subsequently entered into a stipulation providing that John Lewis' visitation rights would be exercised by his parents and that all parties involved would undergo a psychological evaluation. John Lewis did not complete a portion of the evaluation. Based on his evaluations, Dr. Jeffrey Kellogg devised a proposed visitation stipulation. John Lewis agreed with parts of the stipulation, but refused to agree to accept any modification proposed by Dr. Kellogg and refused to participate in any more therapy sessions. Lewis also indicated that he would not pay part of Dr. Kellogg's fee for evaluation because Elaine Conaughty had established the relationship with Dr. Kellogg without consulting him.

Following the evaluation, Dr. Kellogg recommended a return to normal visitation between David and John Lewis. This visitation schedule was continued without incident until May of 1987. During this time, Dr. Kellogg had continued to see David. In May 1987, Dr. Kellogg prepared a written evaluation which diagnosed David as having a separation anxiety disorder. The evaluation indicated that the source of David's anxiety was his visitation with John and Patty Lewis and that David had a negative attitude toward his relationship with John and Patty Lewis. Dr. Kellogg recommended against the upcoming summer visitation and that all parties involved should participate in family therapy. Based on this evaluation, Ms. Conaughty filed a motion for temporary custody order regarding visitation seeking custody of David during the summer of 1987.

On June 4, 1987, John Lewis filed a petition for rule to show cause and other relief alleging that he had not seen Dr. Kellogg's report until the temporary modification petition was filed, despite having requested it several months earlier, and that Elaine Conaughty was again denying him visitation with David. On June 8, 1987, the court entered an order finding that Elaine Conaughty was not in contempt and temporarily modifying John Lewis' summer visitation rights, reducing it to two weeks and alternating weekends. The court also ordered that Dr. Kellogg was to evaluate David immediately after the two-week visitation and report his findings to the court and the parties. David Lewis spent June 10, 1987, through June 24, 1987, with Mr. Lewis. John and Patty Lewis both testified that David exhibited no emotional problems while with them and was quite happy.

On July 3, 1987, John Lewis came to Elaine Conaughty's home to pick David up for the weekend visitation. David became extremely up-

set and refused to go. When Mr. Lewis returned later that evening to again attempt to pick up David for visitation, David became hysterical, threatened to strike Mr. Lewis with a broom, and even called the West Frankfort police department. The officer dispatched found David extremely agitated and David expressed to the officer that he did not want to go for the visitation.

On July 21, 1987, Mr. Lewis again filed a petition for rule to show cause alleging that Ms. Conaughty was denying him visitation and a petition to restore visitation. Ms. Conaughty subsequently filed a petition to restrict visitation. A hearing was held on September 10, 1987. The Lewises, the Conaughtys, Dr. Kellogg, and several other witnesses testified. The court also interviewed David in chambers. At the conclusion of the hearing, the court stated its belief that it did not believe most of what David had been saying because it did not make sense and that it believed the source of David's emotional problems with his father to be Ms. Conaughty. The court also indicated its belief that much of Dr. Kellogg's evaluation was based on the false impression being given by David and that continued visits with Dr. Kellogg were reenforcing David's problem. The court denied Ms. Conaughty's petition to restrict visitation and granted Mr. Lewis' petition to restore visitation. The court also ordered all visits to any psychiatrist or psychologist to cease until further order of the court.

■ On appeal, Elaine Conaughty argues that the trial court erred in awarding attorney fees because it failed to consider the parties' relative financial conditions. Section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) provides for an award of attorney fees after considering the parties' relative financial conditions, and section 508(b) of the Act provides for such an award without such consideration only in actions to enforce a child support award. (Ill. Rev. Stat. 1985, ch. 40, pars. 508(a), (b).) Section 610(c) of the Act provides for an award of attorney fees against a party seeking modification where the action is "vexatious and constitutes harassment." (Ill. Rev. Stat. 1985, ch. 40, par. 610(c).) Elaine Conaughty argues that her denial of visitation was based on the child's violent refusal to go and on Dr. Kellogg's report and was not "unjustified."

Although not specifically stated in the order, it is clear from the trial court's comments at the close of the proceedings that the court found Elaine Conaughty's repeated attempts at modification and her continual interference with Mr. Lewis' visitation rights to be vexatious and to constitute harassment. The decision to award attorney fees rests with the discretion of the trial court. (*In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 501 N.E.2d 1015.) We find no

abuse of discretion in this case.

Ms. Conaughty also argues that the trial court erred in terminating all visits to any psychologist or psychiatrist until further order of the court. She maintains that there was no evidence to support the court's conclusion that termination of the visits were in the child's best interests and that the court's decision was against the manifest weight of the evidence.

■ The court's order was based on its belief that the visits to Dr. Kellogg were part of the problem and were exacerbating David's emotional problems. This belief was based on the court's evaluation of the credibility of the various witnesses. It is well settled that determination of witness credibility is best left to the trier of fact because it is the trier of fact who hears the testimony and observes the demeanor of the witness. A reviewing court, which has only a cold record before it, will not presume to substitute its own independent evaluation of witness credibility unless the trial court's evaluation is found to be manifestly erroneous. After reviewing the record, we cannot make such a finding in the present case. Though had we been in a position to hear and see the witnesses in the first instance we might have arrived at a different conclusion than that of the trial court, we are not persuaded that we should now reject that conclusion in favor of our own. We note that Dr. Kellogg admitted that David had shown no improvement despite 75 hours of counseling. We note further that the trial court did not permanently bar David from seeing a psychologist or psychiatrist, but only until further order of the court. There is no showing in the record that either party has requested the court to allow David to resume his visits.

■ ■ Finally, Ms. Conaughty argues that the trial court's decision to deny her motion to restrict visitation and to grant Mr. Lewis' motion to restore visitation was against the manifest weight of the evidence. Restriction of visitation rights requires a showing that the visitation endangers the physical or emotional welfare of the child. (Ill. Rev. Stat. 1985, ch. 40, par. 607(c); *Woods v. Woods* (1986), 147 Ill. App. 3d 772, 498 N.E.2d 906.) The endangerment standard is an onerous one and not easily met. (*In re Marriage of Hanson* (1983), 112 Ill. App. 3d 564, 445 N.E.2d 912.) The trial court found that Ms. Conaughty failed to meet that standard and we conclude that such finding is not against the manifest weight of the evidence. While there is evidence suggesting that the visitations with Mr. Lewis are part of David's problem, there is also evidence that numerous other factors contributed to the problem. While we have no doubt that a problem exists with the visitation, it is not clear that the source and

nature of the problem is John Lewis. We also conclude that the restoration of John Lewis' visitation rights was not against the manifest weight of the evidence. Modification of visitation rights requires a showing that the modification is in the child's best interests. (*Griffiths v. Griffiths* (1984), 127 Ill. App. 3d 126, 468 N.E.2d 482.) The trial court had previously modified John Lewis' summer visitation rights with David based on the report of Dr. Kellogg. The court subsequently determined that Dr. Kellogg's report was unreliable. As we stated earlier, this determination was based on the trial court's evaluation of the credibility of the various witnesses and of David Lewis. We are not persuaded that the trial court's evaluation was erroneous and so find no error in the court's restoration of John Lewis' visitation rights.

For the foregoing reasons, the judgment of the circuit court of Franklin County is affirmed.

Affirmed.

CHAPMAN and GOLDENHERSH, JJ., concur.