In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2550

E.A. and J.A., minors, by their father DANA A. ALDEN as next friend,

*Plaintiffs-Appellants,*

*v.*

MARY K. GARDNER,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 7181 — **Harry D. Leinenweber**, *Judge.*

ARGUED FEBRUARY 21, 2019 — DECIDED JULY 17, 2019

Before EASTERBROOK, SYKES, and BARRETT, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. This case began as a child-custody dispute in state court. Dana Alden and his wife divorced in 2009. They shared custody of their two children. In 2012 Alden's ex-wife complained to the court that Alden was trying to turn the children against her. The court appointed a psychologist, Mary Gardner, to evaluate the children. See 750 ILCS 5/604.10(d). Gardner concluded that Alden was us-

ing "severe alienation tactics" to drive a wedge between Alden's children and their mother. Gardner recommended that the court limit Alden to supervised visitation and give full custody of the children to their mother. After motions and a hearing, that's what the state court did: it terminated Alden's custody, awarded sole custody to the mother, and ordered all of Alden's visitation to be supervised. The Appellate Court of Illinois affirmed. *In re Marriage of Alden*, 2014 IL App (2d) 121046-U.

In 2013 Alden asked the court to rescind the supervised visitation requirement. (Illinois courts can modify visitation orders in post-judgment proceedings. See former 750 ILCS 5/607(c) (in effect in 2012) and current 750 ILCS 5/603.10(b) (effective 2016).) Gardner did additional evaluations but concluded that circumstances had not changed. After another hearing, Alden failed to persuade the court to modify its order. He appealed unsuccessfully. *In re Marriage of Alden*, 2015 IL App (2d) 140346-U. In 2015 he tried yet again, with the help of his own expert, to persuade the court to alter the custody and visitation arrangements. Again Gardner reassessed the situation. And again Alden failed to convince the court to alter its order. He didn't bother to appeal.

After these three unsuccessful outcomes in state court, Alden changed his strategy. He filed this federal suit under 42 U.S.C. §1983 against Gardner. Alden asserts his children's rights as their next friend. He says that he does not challenge Gardner's actions as an expert witness but rather denies the validity of the Illinois Marriage and Dissolution of Marriage Act (IMDMA), 750 ILCS 5/101 to 5/802, to the extent that it permits a state court to change or terminate custody arrangements after a divorce on a showing that one parent en-

dangers a child's physical, mental, moral, or emotional health. 750 ILCS 5/602.7(b), 603.10. And this creates a problem: Gardner does not enforce any state law.

Alden presents two theories for the statute's invalidity. First, he argues that the statute violates the First Amendment (applied to the states by the Fourteenth) by regulating speech: it takes parents' speech into consideration when deciding on the best interests of the child. Second, he contends that the statute violates the Fourteenth Amendment's equal protection clause because it treats parents differently based on whether they are divorced: the standard of proof for awarding or modifying divorced parents' custody is preponderance of the evidence, 750 ILCS 5/602.7(b), 750 ILCS 5/603.10, while otherwise the standard for terminating parental rights is clear and convincing evidence, 705 ILCS 405/2-21(5)(iii). (The statutes explicitly referencing the preponderance standard were enacted in 2015, after Alden's state court case began. State courts had interpreted the predecessor statute on modifying visitation, former 750 ILCS 5/607, as requiring a preponderance standard. See *In re Marriage of Slayton*, 292 Ill. App. 3d 379, 387 (1997); *Griffiths v. Griffiths*, 127 Ill. App. 3d 126, 129 (1984). But when custody rather than just visitation was at issue, former 750 ILCS 5/610 required clear and convincing evidence.)

The district court dismissed the case for lack of jurisdiction, holding that Alden lacks standing. He didn't show that any of the injuries he alleges is traceable to Gardner as opposed to the independent action of the state judiciary. Nor did Alden contend that victory in this suit would change custody arrangements. If he had, then the *Rooker-Feldman* doctrine would bar the suit: state court losers can't come into

federal court to complain that the state court judgment violates their federal rights. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Otherwise federal district judges would effectively hold appellate jurisdiction over state courts, while under 28 U.S.C. §1257 only the Supreme Court has that jurisdiction. See also *Milchtein v. Chisholm*, 880 F.3d 895, 897 (7th Cir. 2018). The district court concluded that Alden has presented only a request for an advisory opinion about the validity of state law.

On appeal Alden leads with the curious argument that Gardner can't challenge *his* standing because *she* lacks standing. Alden relies on *Diamond v. Charles*, 476 U.S. 54 (1986), to argue that the real party in interest in defending the validity of a state statute is the state itself. But this doesn't help Alden in the least. First, it's irrelevant whether Gardner has standing. *Alden's* standing is essential to the existence of a case or controversy, and a district court must inquire into every plaintiff's standing no matter who the defendant is or what the defendant argues. Second, Alden's argument amounts to an admission that he has sued the wrong party. That by itself is enough to sustain the district court's dismissal.

Gardner does not enforce any state law. She did not initiate proceedings as a prosecutor might in a criminal proceeding. She is instead a psychologist who provided information to the state court. The state judiciary, not Gardner, made the decision to remove Alden's children from his custody.

Alden has a heads-I-win-tails-you-lose conception of this litigation. He thinks that Gardner can't defend against his claim because she lacks standing. (Indeed, he insists that

Gardner "has no business making an appearance in this Court and had no business making an appearance in the district court.") He characterizes Gardner's position as an effort to defend the rights of another—namely, the State of Illinois. Yet Alden thinks that he has still sued the state by suing Gardner "in her official capacity," that the Attorney General of Illinois should be defending this case, and that he is entitled to a summary decision in his favor because the state has not defended its legislation.

The State of Illinois did not defend for the simple reason that it was not sued. Indeed, Alden *cannot* sue Illinois in its own name because it is not a "person" for the purpose of §1983. See *Will v. Michigan State Police*, 491 U.S. 58, 64–70 (1989). Alden says that he is suing the state by means of an official-capacity suit. But this just reveals his misunderstanding of both *Will* and *Ex Parte Young*, 209 U.S. 123 (1908), the point of which is that plaintiffs can sue state officials under §1983 when they are *not* deemed to be the state. *Will* holds that any official-capacity suit against a state official is one against the office, and thus against the state. 491 U.S. at 71. See also, e.g., *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Alden had a straightforward way to raise his constitutional arguments: in the proceedings regarding his parental rights. State courts can and do consider constitutional arguments in custody cases. See, e.g., *In re Marriage of Bates*, 212 Ill. 2d 489, 508–15 (2004); *In re Andrea F.*, 208 Ill. 2d 148, 165 (2003). Alden has had multiple opportunities to present his constitutional theories to the state court. He could have raised these arguments in 2012 before the court awarded sole custody of the children to their mother. Or he could have made these arguments in 2013 or 2015, when he sought

modification of the state court order. As far as we can tell, he didn't bring up his constitutional objections in any of these state-court proceedings.

It is difficult to see how Alden can litigate his theories in federal court even had he found someone suable. He just wants to raise an issue he could have raised before. And *that* runs into preclusion problems. See *Golden v. Helen Sigman & Associates, Ltd.*, 611 F.3d 356, 362 (7th Cir. 2010) ("[E]ven if some aspect of [the challenged] orders escapes *Rooker-Feldman* … we see no reason why [the plaintiff] should be entitled to reopen matters that the state court actually resolved or could have resolved."). Cf. *Lance v. Dennis*, 546 U.S. 459, 466 (2006); *Skinner v. Switzer*, 562 U.S. 521, 531–33 & nn. 10–11 (2011).

A note about how we have identified the plaintiffs. Alden filed this suit without using his own name, and the complaint gives the names of his children as John Doe and Jane Doe. Minors are entitled to litigate anonymously, but under Fed. R. Civ. P. 5.2(a)(3) the right way to provide anonymity is to use initials rather than generic names such as "John Doe." We have changed the caption accordingly. And we have given Alden's own name in the caption and throughout the opinion. He is an adult and has not provided a reason that could support allowing him to litigate in secret. Only "exceptional circumstances" justify the use of a fictitious name for an adult party. *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). See *Doe v. Chicago*, 360 F.3d 667, 669–70 (7th Cir. 2004); *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005); Charles Alan Wright & Arthur R. Miller, 5A *Federal Practice & Procedure* §1321 (4th ed. 2018) (discussing the requirement in Fed. R. Civ. P. 10(a) that

complaints "name all the parties" and observing that federal courts disfavor anonymous filings). That Alden and his former wife have been litigating about the custody of their children is no secret. Multiple decisions of the state courts use his name. It is properly a subject of public notice in federal court too.

This is abusive litigation. Alden, a lawyer representing himself, seems determined to continue the child-custody litigation in another forum even if that means exposing an innocent person such as Gardner to travail and expense. He concedes—indeed, he trumpets—that he has sued someone who he knows is not responsible for enforcing the state's child-custody laws. We give Alden 14 days to show cause why we should not order him to reimburse Gardner's legal expenses or impose other sanctions. See Fed. R. App. P. 38. And we will send a copy of this opinion to both state and federal bodies with authority over the conduct of the bar, so that they can determine whether Alden's misuse of the legal process calls into question his fitness to practice law.

AFFIRMED