MAX L. MCCURDY *v*. BARBARA J. MCCURDY (NOW BARBARA J. GARBOUROUGH).

[No. 1-1076A203. Filed June 28, 1977.]

---

*William C. Moyer,* of New Albany, for appellant.

## STATEMENT OF THE CASE

LOWDERMILK, J.—This is an appeal from the trial court's denial of petitioner-appellant Max McCurdy's (Max) petition to allow visitation rights.

## FACTS

In April 1975 appellee Barbara J. McCurdy (Barbara) filed with the trial court her petition for the dissolution of her marriage to Max. At that time Max was in the county jail awaiting trial for one count of kidnapping and four counts of rape to which he ultimately pleaded guilty. When their marriage was dissolved in June 1975 Barbara retained custody of the children and Max was given reasonable visitation rights. The children, who were respectively seven and four years old at the time, visited Max while he was in the county jail.

After Max was sentenced to the state prison in Michigan City, Indiana, Barbara refused to allow the children to visit him. She was afraid that the children would be emotionally harmed by the knowledge that their father was in prison, so she told them that their father was institutionalized in a hospital. Barbara also feared that the children would be harmed emotionally by having to visit their father at the prison with its atmosphere of security searches, guards with guns, regulated schedules, etc.

When Max realized that Barbara would not allow the children to visit him at the prison he petitioned the court to modify the dissolution of marriage decree and compel Barbara to bring the children to see him on a regular basis, or in the

alternative to allow his parents to transport the children from Jeffersonville to Michigan City to visit him. The court denied Max's petition on the basis that it would not be in the children's best interest to know at this point that their father was in prison and to have to be exposed to the complicated procedures and austere surroundings of a penal institution.

## ISSUES

1. Is the judgment of the trial court supported by sufficient evidence?

2. Is the judgment of the trial court contrary to law?

## DISCUSSION AND DECISION

### ISSUE ONE

Max appeals from a negative judgment. He had the burden of proof at trial, and the trial court found that he did not meet that burden. Max's contention that the evidence was insufficient to support the judgment cannot be reviewed on appeal. A negative judgment can only be attacked as being contrary to law. *Link* v. *Sun Oil Co.* (1974), 160 Ind. App. 310, 312 N.E.2d 126.

### ISSUE TWO

In determining whether a judgment is contrary to law we may not weigh the evidence nor consider the credibility of witnesses; it is only where the evidence leads to but one conclusion and the trial court has reached an opposite conclusion that the judgment will be disturbed as being contrary to law. See *Pokraka* v. *Lummus Co.* (1951), 230 Ind. 523, 104 N.E. 2d 669.

Max has alleged that the judgment, wherein the trial court denied his petition to modify the dissolution of marriage decree and to allow his children to visit him in prison, was contrary to law. The statute which governs the visitation

rights of a divorced parent who does not have custody of the children is IC 1971, 31-1-11.5-24 (Burns Supp. 1976) which provides as follows:

". . . (a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation by the parent might endanger the child's physical health or significantly impair his emotional development.

(b) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation might endanger the child's physical health or significantly impair his emotional development." (Citations omitted)

Max had been granted "reasonable visitation rights," but he was precluded from exercising those rights by his incarceration. In denying Max's petition to modify the decree the court explained its decision by saying:

". . . as I say, he [Max] has placed himself in this position and also the testimony regarding visits to a prison, I don't think there would be any question that these children, probably even the six year old, would realize they're going to a prison if you are taking personal items and you're searched, and I'm sure they would be subjected to search also. I don't think there would be any question these children would know they were visiting a prison. I think the evidence is uncontradicted that the children, at this time, do not know their father is in prison. I don't know how long this can last or how long they can be kept from knowing that, but looking at it strictly from the standpoint of what is in the best interest of the children, the Court is going to. hold that the Petition be denied." (Our insert)

In ruling upon Max's petition the court considered two things: (1) the fact that a parent's right of visitation should not be restricted unless it finds that the visitation might endanger the children's physical or emotional health, and (2) that which would be in the best interest of the children under the circumstances. The trial court balanced Max's right and desire to have his children visit him against the desirability

of exposing the children to the prison atmosphere and to the knowledge that their father was a criminal.

In *State of Indiana ex rel.* v. *Starke Circuit Court* (1958), 238 Ind. 194, 149 N.E.2d 541, 543-544, the court stated:

"We are here presented with one of the most vexing problems growing out of divorce, namely, the support of children and the right of both parents to enjoy the affection and share the companionship of their children. The problem is particularly acute under circumstances where, as here, the opportunity of such companionship is either denied to or made untenable for the father who nevertheless is required to pay support under threat of contempt of court.

Admittedly, in all such cases *the welfare of the child must receive first consideration by the court,* and this is true even though its parents are unreasonable, recalcitrant or even contemptuous of the court in regard to their behavior toward each other. However, the welfare of a child not only requires that it be supported; *a child also needs the affection and companionship of both its parents insofar as their unnatural position makes this possible.* Therefore, the visiting privileges with the father as decreed by the court are a matter of proper care and custody with which relator was charged. Furthermore, in this case *both parents,* whether it be the mother charged with the responsibility of the care and custody or the father charged with the financial support of the child, *are thereby as a matter of equity and fair dealing entitled to share in the affection and companionship of the child, as circumstances permit.* These considerations are inseparably related to the welfare of the child and the reciprocal equities between the parties." (Our emphasis)

*Starke, supra,* points out that visitation can be of *mutual* benefit for the parent and the child. In the case at bar it appears that the court and Barbara did not feel that the children would have been harmed so much by visiting and knowing Max, but that they would have been harmed by the atmosphere of the place of visitation and by the knowledge that their father was in prison rather than in a hospital, a truth which they will ultimately discover. Therefore, any mutual benefit which might have accrued to Max and his

chidlren by allowing them to visit him at the prison was precluded by the court's determination.

We hold that the trial court abused its discretion and that its decision is contrary to law. Although there are no Indiana cases in point on the issue presented before us, there is a Missouri case, *M— L— B—* v. *W— R— B—* (1970), Mo. App. 457 S.W.2d 465, 467, wherein the court stated:

". . . it has been held (soundly, we think) that neither past delinquency [24 Am. Jur.2d Divorce and Separation § 802, p. 912—see Smith v. Smith, 61 Ariz. 373, 149 P.2d 683 (2, 3); Kennard v. Kennard, 87 N.H. 320, 179 A. 414, 417-418(1)], nor former conviction and confinement [Radford v. Matczuk, 223 Md. 483, 164 A.2d 904, 88 A.L.R.2d 140], *nor present incarceration* [Chadwick v. Chadwick, 275 Mich. 226, 266 N.W. 331] *necessarily requires denial of the errant parent's right of access to his children.*

Although there was no such contention in the trial court, the mother here asserts that '[the father] has rendered himself unfit by virtue of his being convicted and sentenced to imprisonment for a crime involving moral turpitude.' This prompts the observation that '[n]otwithstanding defendant's present incarceration, as the result of a criminal conviction, the law does not preclude repentance, reformation, and forgiveness.' Chadwick v. Chadwick, supra, 266 N.W. at 332. But that aside, the mother does not seriously press her quoted charge of the father's unfitness to have access to his children, for she immediately concedes that *'the concern . . . is not so much the question of the [father's] fitness, but rather the environmental circumstances under which any visitation would of necessity have to take place'* in that *'the children would be forced to confront their father in the abnormal surroundings of prison life, including guards, uniforms, bars, etc.'* Thus, the mother *now* [Orig. emphasis] professes 'concern' only about *the place of visitation* [Orig. emphasis], which, as we observed preliminarily, appears from the language of the decretal prohibition to have been the primary and motivating consideration therefor. On the abbreviated record presented to us, *we are unable to subscribe to the view,* unsupported by any evidence adduced or authority cited, *that the father should be for an extended period of time, absolutely foreclosed from any access to or*

*visitation with his children by the sole circumstance [Also Orig. emphasis] that his confinement necessitates any such access or visitation in a penal institution."* (Our emphasis)

We approve of the language in *M— L— B—, supra,* in that it recognizes the need and respects the right of a parent and child to share personal acquaintance, even though the circumstances are less than ideal.

In the case at bar there is testimony which indicates that the prison officials not only permit, but even encourage children to visit their fathers at the prison. There has been no equitable or legal reason presented in this case which would require that Max and his children should forego the mutual benefit that would be derived from occasional personal visitation with each other. Reasonable men would agree that it would be better for the children to learn the truth about their father now so that they can renew their acquaintance with him and adjust their lives in accordance with reality, rather than in accordance with a story which has been fabricated to insulate them from a truth which they will ultimately discover. Additionally, it is possible that the children's visits may have a rehabilitative effect upon Max.

We, therefore, direct the trial court to modify the dissolution of marriage decree by compelling Barbara to allow the children to occasionally visit Max in prison. In modifying the decree the trial court should attempt to space the times of visitation in such a way and at such intervals that the normal lives of the children will not be overly disrupted.

Judgment reversed and cause remanded to the trial court with instructions to modify the dissolution of marriage decree in a manner not inconsistent with this opinion.

Robertson, C.J., concurs; Hoffman, J., participating by designation, dissents with opinion.

## DISSENTING OPINION

HOFFMAN, J.[1]—I respectfully dissent from the majority opinion.

The trial judge, on May 7, 1976, made the following findings and judgment:

"And the Court being duly advised in the premises, now finds as follows:

"1. That the marriage between these parties was dissolved by this Court on the 12th day of June, 1975, and as a result of that action, Barbara J. McCurdy was given the legal custody of the two (2) minor children of that marriage, namely, TAMELA McCURDY, age eight (8) years and JOHN McCURDY, age five (5) years.

"2. That at the time of the decree of dissolution aforementioned, Max L. McCurdy was incarcerated in the Clark County Jail awaiting trial on numerous criminal charges consisting inter alia of several counts of rape and kidnapping.

"3. That as a result of the dissolution of marriage, Max L. McCurdy, was granted the right of reasonable visitation with said minor children.

"4. That Max L. McCurdy has subsequently been sentenced to the Indiana State Prison, Michigan City, Indiana, on his plea of guilty to one kidnapping charge and four rapes and is presently serving a life sentence on these charges.

"5. That the children of the parties hereto are presently unaware that Max L. McCurdy is in prison, but have been told that he is institutionalized in a hospital.

"6. That to allow Max L. McCurdy visitation with the minor children hereto at the Indiana State Prison might endanger the children's physical health, or signficantly (sic) impair their emotional development, and considering the age of the children, visitation at the Indiana State Prison is unreasonable.

"IT IS, THEREFORE, CONSIDERED, ORDERED AND DECREED by the Court that Max L. McCurdy's petition to allow visitation rights should be, and hereby is denied."

Pursuant to IC 1971, 31-1-11.5-24 (Burns Supp. 1976), the trial court found that visitation might endanger the physical

---

1. Hoffman, Judge, participating by designation.

health or significantly impair the emotional development of the children.

Testimony of two witnesses at the hearing described the reaction of Tamela to her father's arrest and incarceration in the county jail. "And she withdrawed. (sic) She cried an awful lot; she just didn't seem happy with anything. She didn't want to be with the other children, she didn't want to be with people; she more or less wanted to be off to herself. And when it would get dark, she wanted to make sure she was by her mother." It took about six months for Tamela to return to her cheerful self as a happy and content child, who likes to be with other children and have a good time.

Thus, there was ample evidence upon which the trial court based its finding and judgment.

Thus, there was no abuse of discretion by the trial court and its judgment should be affirmed.

NOTE.—Reported at 363 N.E.2d 1298.