**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
May 15 2014, 5:58 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**JASON KEEL**
Bunker Hill, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON KEEL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No.  29A02-1305-DR-463 |
| | ) | |
| APRIL NAJDOWSKI, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Gail Bardach, Judge
Cause No. 29D06-0504-DR-1818

**May 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Jason Keel ("Father"), pro se, appeals the trial court's denial of his petition for reinstatement of his parenting time. He raises several issues, which we consolidate and restate as whether the trial court abused its discretion in limiting his contact with his daughter, S.K., and whether the trial court violated Father's Fourteenth Amendment rights. Finding no error, we affirm.

## Facts and Procedural History

In 2002, S.K. was born to Father and April Najdowski ("Mother"). Father and Mother divorced on July 6, 2005, and Father was initially not awarded any parenting time. In 2006, Father and Mother agreed upon a modification of visitation where Father would have parenting time on weekend afternoons. In 2007, Mother filed a petition to suspend Father's parenting time, which was granted by the trial court. A number of motions were filed by Father between 2007 and 2012, but he never was successful in reestablishing parenting time. Father eventually petitioned for a change of judge, and a new judge qualified and accepted the case. In March 2012, the court held a hearing and determined that based on the facts presented, Father's parenting time would not be modified until he was released from incarceration. The court set the next hearing for August 10, 2012, assuming Father would be released from custody at that point. That hearing was continued twice upon request to July 2, 2013. Father was still in custody as of July 2.[1] Despite the fact Father was again

---

[1] There was a short period of time between the March 2012 and July 2013 hearings that Father was released from custody, but the exact dates are unclear.

incarcerated, the court held the hearing to reconsider its March 2012 order denying parenting time.[2]

After the hearing, the court issued an order finding Father only had sporadic and inconsistent contact with S.K., who was then ten years old, and that any prior contact between the two was insufficient to establish a meaningful relationship. Further, the court found that the continuation or re-institution of a relationship between Father and S.K. would impair S.K.'s emotional well-being and development. The court's order allowed Father to send S.K. a letter once per month, as well as a birthday card, in order to rebuild a relationship. Finally, the court ordered Father will not have in-person parenting time until he is released from custody; submits to a substance abuse assessment and completes all treatment recommended by the assessment; completes both anger and stress management classes; and does not commit any probation violations for six months — the earliest he will be able to complete these requirements is January 2015. Father now appeals.

<u>Discussion and Decision</u>

I. Abuse of Discretion

A. Standard of Review

Mother did not file an appellee's brief. We apply a less stringent standard of review with respect to showings of reversible error when an appellee fails to file a brief. <u>Zoller v. Zoller</u>, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). We will not undertake the burden of

---

[2] The court issued a transport order so Father was physically present and participated fully in this hearing.

3

developing the arguments for the appellee, and we may reverse if the appellant establishes prima facie error. Id. When the appellant fails to sustain that burden, we will affirm. Murfitt v. Murfitt, 809 N.E.2d 332, 333 (Ind. Ct. App. 2004).

## B. Father's Parenting Time

A court may grant or deny parenting time whenever modification serves the best interests of the child. Ind. Code § 31-17-4-2.[3] It shall not restrict parenting time rights unless it finds the parenting time might endanger the child's physical health or significantly impair the child's emotional development. Id. Despite the word "might" in the statute, this Court has interpreted the language in the statute to mean "a court may not restrict parenting time unless that parenting time 'would' endanger the child's physical health or emotional development." D.B. v. M.B.V., 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009).

Father's first argument is Mother did not prove beyond a reasonable doubt that visitations would cause S.K. any harm. Mother, though, was not required to prove beyond a reasonable doubt that the visitations would cause S.K. harm. Rather, a party who seeks to restrict a parent's visitation bears the burden of presenting evidence justifying a restriction by a preponderance of the evidence. Hatmaker v. Hatmaker, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013). The trial court explicitly found "there is sufficient evidence that's been introduced,

---

[3] Father cites Indiana Code section 31-14-14-1(a) throughout his brief to make his argument. That section governs parenting time following a determination of paternity, not parenting time determinations made during or after a divorce proceeding. The texts of the statutes are substantially similar, though, so this error is of little consequence. (Compare Ind. Code § 31-17-4-2 ("The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development."), with Ind. Code § 31-14-14-1(a) ("A noncustodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might: (1) endanger the child's physical health and well-being; or (2) significantly

4

your present contact with your daughter [S.K.], would impair her emotional development." Transcript at 96. Father has not made a prima facie showing that suspending visitation until Father complied with the court's order was not in S.K.'s best interest.

To the extent Father argues the "[t]rial court does not conform to Indiana code" and the "trial court has clearly acted out side [sic] the scope of being a mediator in this case," Brief of Appellant at 7-8, Father has not presented a cogent argument or reasoning as required by our rules. Ind. Appellate Rule 46(A)(8)(a). The fact that Father is pro se does not excuse him from complying with the Appellate rules. Terpstra v. Farmers and Merchants Bank, 483 N.E.2d 749, 754 (Ind. Ct. App. 1985), trans. denied. His argument is thus forfeited.

Father's second argument is that Father is denied his constitutional right to rebuild his relationship with S.K. by the court preventing parenting time. Father cites a Kentucky case and McCurdy v. McCurdy, 173 Ind. App. 437, 363 N.E.2d 1298 (1977) for support of his position that it is "so blatant of the trial court to abuse its powers as to not award child visitation in prison." Brief of Appellant at 9. To the extent Father's argument is the trial court abused its discretion by ordering Father not to have visitation with S.K. until he is no longer incarcerated, we disagree. McCurdy involved a mother who did not want her children to confront their father in the surroundings of prison life, and it was the place, not the father, that triggered her concern. Id. at 442. Here, the court found that a relationship with Father would impair S.K.'s emotional development, and Father would not be able to rectify the underlying issues until he was released from incarceration. The trial court's order then was

impair the child's emotional development.))

not to deny Father parenting time only because he was incarcerated. Father has not made a prima facie showing of error.

Father's third and fourth arguments revolve around the portion of the court's order that limits Father's contact with S.K. to one letter a month and the trial court's observation that Father's contact with S.K. has been inconsistent. Father fails to make a cogent argument on these points with citations to the record or authority, so these arguments are forfeited. App. R. 46(A)(8)(a).

## II. Violation of Fourteenth Amendment Rights

Father lastly argues the trial court violated his Fourteenth Amendment rights "by placing him under duress, threatening and intimidation by modifying his probation . . . to include conditions which prevent Father from seeing [S.K.] and placing [him] in harm's way." Br. of App. at 1. Father actually only mentions the Fourteenth Amendment in the summary of issues presented section of his brief; he fails to present any argument in the body of his brief regarding which of his rights were violated, aside from alleging the court placed him under duress when it asked if he would be willing to modify the terms of his probation. While this argument was somewhat difficult to understand and lacked citation to any authority or the record, we prefer to reach the merits of a case when possible, so we will address this issue as we understand it. Hass v. State, Dep't of Transp., 843 N.E.2d 994, 997 (Ind. Ct. App. 2006), trans. denied.

We interpret this as an allegation that Father's due process rights were violated when the court placed him under duress and threatened him to get him to change the terms of his

probation. The trial court, in its order, noted that Father agreed to a modification of the conditions of his probation previously imposed, and successful completion of probation is a condition precedent for Father to regain in-person parenting time. Father argues that he had no choice but to accept this modification, and he felt that if he did not agree or accept the changes, he would be denied parenting time. Our reading of the record is quite different. At least six times during the July 2, 2013, proceedings Father stated he wanted to get himself into a drug and alcohol treatment program, see, e.g., tr. at 39, 58-60, 80, 83, and he volunteered that he was willing to complete the programs before he had in-person parenting time. Id. at 39. The court asked Father if he meant he would be willing to wait until he was released from custody to complete a six to eight month drug and alcohol course before actual parenting time with S.K., and Father affirmatively replied. Id. at 59. After the presentation of evidence, the court asked Father again if he would be willing to complete a CARE assessment and comply with any recommended programs, and take anger and stress management classes, as part of his probation. The court stated that its parenting time determination would not depend on Father's probation modification. It also cautioned Father about the potential harms in altering the probation terms, and that he was "under no obligation whatsoever to agree to that as additional – or those as additional conditions of probation." Id. at 95. Father's argument that he was under duress at the time he agreed to the modification of his probation fails.

7

<u>Conclusion</u>

Concluding the trial court did not abuse its discretion in restricting Father's parenting time and Father's Fourteenth Amendment rights were not violated, we affirm.

Affirmed.

RILEY, J., and BRADFORD, J., concur.