# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 25 2016, 6:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ryan W. Tanselle
Capper Tulley & Reimondo
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Paula M. Sauer
Danville, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Edward Zaragoza,

*Appellant-Respondent,*

v.

Shella Zaragoza,

*Appellee-Petitioner*

April 25, 2016

Court of Appeals Case No.
32A01-1510-DR-01705

Appeal from the Hendricks
Superior Court

The Honorable Karen M. Love,
Judge

Trial Court Cause No.
32D03-1405-DR-0300

**Bailey, Judge.**

# Case Summary

Edward Zaragoza ("Father") appeals an order denying him parenting time visits at his place of incarceration with the two children born of his marriage to Shella Zaragoza ("Mother"), K.Z. and M.Z. ("the Children"). We affirm.

# Issues

Father presents two issues for review:

> I.  Whether his parenting time was improperly restricted or eliminated; and

> II.  Whether the trial court abused its discretion in denying Father's initial request for appointed counsel, although counsel was subsequently appointed.

# Facts and Procedural History

Father was arrested in April of 2010 and charged with Murder and several other felonies. He was ultimately convicted as charged, found to be a habitual offender, and given a sentence of 120 years.

On May 14, 2014, Mother filed a petition to dissolve her ten-year marriage to Father. On July 22, 2014, the trial court granted the dissolution petition and awarded Mother the sole physical and legal custody of the Children. At the hearing conducted on that date, the trial court denied Father's request for court-appointed counsel but appointed an attorney to serve as the Children's Guardian ad Litem ("GAL"). Father had requested parenting time to take

place three times per year at the Wabash Valley Correctional Facility; this request was taken under advisement.

[5] On January 6, 2015, the trial court ordered Mother to provide photographs of the Children to Father and permitted Father to send a monthly letter addressed to K.Z. (with certain restrictions, including the requirement that Father refrain from discussing his criminal case). Upon the recommendation of the GAL, Mother was ordered to obtain mental health counseling for K.Z. The trial court set a hearing date in 2015 to address the request for parenting time.

[6] On February 3, 2015, counsel was appointed for Father. Appointed counsel pursued an appeal; however, the appeal was dismissed as interlocutory.

[7] Two additional hearings on the parenting time request were conducted, on May 5, 2015 and on August 14, 2015, with both parents represented by counsel. On September 21, 2015, the trial court issued an order denying Father's request for parenting time. This appeal ensued.

# Discussion and Decision

## Parenting Time Order

[8] "In all visitation controversies, courts are required to give foremost consideration to the best interests of the child." *Marlow v. Marlow*, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), *trans. denied*. We review parenting time decisions for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances

before the court or if the court has misinterpreted the law. *Sexton v. Sedlak*, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), *trans. denied*.

[9]     Restriction of parenting time is governed by Indiana Code Section 31-17-4-1(a), which provides:

> A parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development.

[10]    Even though the statute uses the word "might," this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time "would" endanger the child's physical health or emotional development. *D.B. v. M.B.V.*, 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009). A party who seeks to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction. *Id.* The burden of proof is by a preponderance of the evidence. *In re Paternity of W.C.*, 952 N.E.2d 810, 816 (Ind. Ct. App. 2011).

[11]    Here, the trial court's order contained the requisite statutory finding of endangerment, together with a significant number of findings of fact entered sua sponte. Such supporting findings are considered "special findings" under

Indiana Trial Rule 52(A)(3).[1] *Cannon v. Cannon*, 758 N.E.2d 524, 526 (Ind. 2001). We will not set aside such findings unless clearly erroneous, and we give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.*

[12] At the hearings, the GAL advised the trial court that K.Z. was "very adamant" that he not see his father. (Tr. A., pg. 48.) K.Z.'s therapist had recommended no parenting time; the GAL stated that she would defer to that recommendation. Mother testified that K.Z. had accessed a computer and discovered the nature of his father's crimes; he had been traumatized by a pre-incarceration incident where Father threatened Mother with a knife and K.Z. tried to intervene; K.Z.'s grades had plummeted when parenting time was under consideration; and, in her personal opinion, K.Z. was not ready to participate in visits with Father. Father testified that, in his opinion, it was "best for" K.Z. to see his father. (Tr. B, pg. 26.) Father proposed that M.Z. come along with K.Z. for visits, without initially being told that she was Father's child.

[13] The trial court found in relevant part: K.Z. had been diagnosed with post-traumatic stress disorder; he exhibited high levels of stress in connection with Father and had expressed a desire not to see Father; he had witnessed domestic violence when his parents were together; M.Z. was born during Father's

---

[1] Pursuant to T.R. 52(A)(3), the trial court "shall make special findings of fact without request in any other case provided by these rules or by statute."

incarceration; Father had previously denied his paternity of M.Z.; Father had no relationship with M.Z.; and the emotional development of both children would be endangered if parenting time were ordered.

[14] Father challenges the factual finding that he denied paternity of M.Z., insisting that he doubted, as opposed to denied, paternity. Indeed, Father testified that he merely expressed doubt of his paternity. However, Mother testified that Father "denied my daughter the whole time I was pregnant with her" and that he wrote to her after the divorce stating that he "still doubted that she was his." (Tr. A, pg. 35-36.) The trial court, within its purview, found Mother to be credible, and it is not the role of this Court to resolve a dispute as to doubt versus denial. *Cannon*, 758 N.E.2d at 526.

[15] Father also challenges the finding that an order for parenting time between Father and M.Z. "may cause further anxiety and stress" for K.Z. (App. at 88.) Father argues that this finding is unsupported because only K.Z. was evaluated by a therapist; M.Z. was not. It is not readily apparent how M.Z.'s lack of therapy undermines the finding of potential harm to K.Z. The trial court could reasonably have inferred that K.Z., who had adamantly opposed parenting time between himself and Father, would experience stress and anxiety if it were ordered for his younger sister. To the extent that Father argues in general terms that the ultimate finding of endangerment was not supported by the evidence, his implicit arguments concern the relative weight and credibility of the evidence and witnesses, "matters within the purview of the trial court." *Cannon*, 758 N.E.2d at 527.

[16] Father also argues that the denial of parenting time is contrary to law because, "despite [his] incarceration, he is still entitled to some parenting time with his minor children." Appellant's Br. at 7. To support his claim of entitlement, Father directs our attention to *McCurdy v. McCurdy*, 363 N.E.2d 1298, 1301 (Ind. Ct. App. 1977). In *McCurdy*, the wife divorced her husband, who was incarcerated for kidnapping and rape. In the dissolution decree, the husband was awarded reasonable visitation with the parties' children. Following the husband's conviction and incarceration in Michigan City, the wife refused to allow visitation between the father and children at the prison. The husband sought an order for regular visits, which the trial court denied after the wife expressed concern about her children confronting the surroundings of prison life and learning that their father had committed crimes.

[17] The denial of parenting time was reversed on appeal. *Id.* at 1301. A panel of this Court concluded that a parent should not be denied visitation with his or her children for an extended period of time solely because of the parent's imprisonment. *Id.* We directed the trial court to "modify the dissolution of marriage decree by compelling Barbara to allow the children to occasionally visit Max in prison." *Id.* In modifying the decree, we indicated that the trial court "should attempt to space the times of visitation in such a way and at such intervals that the normal lives of the children will not be overly disrupted." *Id.*

[18] *McCurdy*, which involved a mother's concern about the prison environment, established a presumption in favor of occasional visitation between an incarcerated parent and his children, notwithstanding the location. It does not

support the proposition that an incarcerated parent has an absolute right to parenting time. The best interests of children is at all times of paramount concern, and a parent seeking a restriction may show that the risk of psychological endangerment outweighs the preference for the ideal of active relationships with both parents. Here, the trial court did not base its order solely upon Father's status as an inmate. Rather, the court found that K.Z.'s and M.Z.'s emotional development would be impaired by a parenting time order and that Father would not be able to rectify the underlying issues until he was released from incarceration.[2] Father has not shown that the trial court misapprehended the law, and therefore we find no abuse of discretion.

## Request for Trial Counsel

[19] Father claims that he was improperly denied the appointment of trial counsel. He suggests that counsel would have assisted him in investigating whether K.Z. had been unduly influenced to reject Father.

[20] At the July 22, 2014 hearing, Father requested court-appointed counsel to assist him in obtaining parenting time. The trial court responded:

> I think what I'm going to do sir rather than appointing an attorney for you I think I'm going to appoint an attorney for the children, a guardian ad litem. . . . What I'm going to do is I'm

---

[2] Father advised the trial court that his direct appeal had resulted in affirmation of his convictions and sentence of 120 years and transfer to the Indiana Supreme Court had been denied; however, he was pursuing post-conviction relief and working with or seeking assistance from an innocence project. The trial court advised Father that he could seek modification upon release, should that happen during the Children's minority.

> going to admit the letters that you sent me as evidence today and
> I'm going to consider those but I am going to appoint a guardian
> ad litem to make recommendations about – for the children[.]

(Tr. A, pg. 14, 16.)  At the next hearing, the parents appeared pro-se and the GAL appeared on behalf of the Children.  Because that hearing culminated with an interim order, appellate counsel was appointed for each parent.  However, Father's purported appeal was dismissed as interlocutory.  Nonetheless, his court-appointed counsel continued to represent Father.  At the third and fourth hearings, each parent appeared with counsel.

[21]  The appointment of counsel for an indigent person who is either prosecuting or defending a civil action is controlled by Indiana Code Sections 34-10-1-1 and -2.  Indiana Code Section 34-10-1-1 provides that "[a]n indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person."  Indiana Code Section 34-10-1-2(b)(2) provides that the court may, under exceptional circumstances, assign an attorney to defend or prosecute the cause.  Pursuant to subsection (c), the factors to be considered include the following:

> (1) The likelihood of the applicant prevailing on the merits of the applicant's claim or defense.
>
> (2) The applicant's ability to investigate and present the applicant's claims or defenses without an attorney, given the type and complexity of the facts and legal issues in the action.

Pursuant to subsection (d), an application shall be denied if the court determines that the applicant is unlikely to prevail.

[22] The issue in this case was parenting time. The matter was not so complex that Father could not understand the concepts or advocate for his position. Indeed, he was successful in having materials admitted into evidence at the first hearing. Moreover, the trial court did not leave it up to the parents to simply present and argue their respective positions. The trial court promptly appointed the GAL to investigate and advocate for the best interests of the Children. Finally, before the close of evidence, Father was represented by court-appointed counsel. He does not make clear what additional evidence would have been presented had counsel been appointed sooner. Father has not established that the trial court erred in denying his initial request for court-appointed counsel.

# Conclusion

[23] The trial court acted within its discretion by denying Father parenting time with Children during his incarceration. Father was not improperly denied court-appointed trial counsel.

[24] Affirmed.

Bradford, J., and Altice, J., concur.