IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE ON BEHALF OF BROOKLYNN H. V. JOSEPH B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA ON BEHALF OF BROOKLYNN H., A MINOR CHILD, APPELLEE,

v.

JOSEPH B., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, AND CHARLOTTE H., THIRD-PARTY DEFENDANT, APPELLEE, AND PHILIP B. AND MARIA B., INTERVENORS-APPELLEES.

STATE OF NEBRASKA ON BEHALF OF BROOKLYNN H., A MINOR CHILD, APPELLEE,

v.

JOSEPH B., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE, AND CHARLOTTE H., THIRD-PARTY DEFENDANT, APPELLEE, AND PHILIP B. AND MARIA B., INTERVENORS-APPELLANTS.

Filed July 3, 2018.    Nos. A-17-920, A-17-944.

Appeals from the District Court for Otoe County: MICHAEL A. SMITH, Judge. Affirmed.

Joseph B., pro se.

Philip B. and Maria B., pro se.

Michael Ziskey, of Fankhauser, Nelsen, Werts, Ziskey & Merwin, P.C., L.L.O., for appellee Charlotte H.

PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

In case No. A-17-920, Joseph B. appeals the decision of the district court for Otoe County that awarded Charlotte H. custody of the parties' minor child, Brooklynn H., and denied him visitation with Brooklynn at the correctional facility where he is incarcerated. He also challenges the district court's ruling on his numerous motions.

In case No. A-17-944, Philip B. and Maria B. (Joseph's parents and Brooklynn's grandparents) appeal the amount of grandparent visitation time awarded to them by the district court.

We affirm the district court's decision in both appeals.

BACKGROUND

Joseph and Charlotte are the parents of Brooklynn, born in 2011. In January 2012, the State filed a complaint to establish paternity and support, alleging that Joseph was Brooklynn's biological father and should be required to pay child support. In October, the district court entered an order of support finding that Joseph was Brooklynn's father and ordering him to pay child support in the amount of $10 per month, noting he was incarcerated. The order did not address custody or parenting time.

In August 2012, following a jury trial, Joseph was convicted in Gage County, Nebraska, of first degree sexual assault, first degree false imprisonment, strangulation, and third degree domestic assault; he was subsequently sentenced to imprisonment for a total of 26 years 8 months to 41 years. In March 2016, he pled guilty in federal court to production and transportation of obscene material for distribution and was subsequently sentenced to imprisonment for 36 months, to be served consecutively to the sentence imposed by the State of Nebraska.

In January 2017, Joseph filed a complaint to modify the order of support, asking the court to provide him visitation with Brooklyn while he is incarcerated. In February, Charlotte filed a "Cross-Complaint to Modify Order," alleging that there was no existing custody order and asking the court to award her legal and physical custody of Brooklynn.

In May 2017, Philip and Maria filed a motion for leave to intervene in the matter for the purpose of establishing grandparent visitation with Brooklynn. After a hearing, the district court granted Philip and Maria leave to intervene in the proceedings. They then filed a "Counter Complaint for Modification," asking the court to award them grandparent visitation with Brooklynn every other weekend. They also asked the court to name them as "temporary guardians" in the event Charlotte is rendered unable to care for Brooklynn. In June, Joseph filed an answer stating that he was in favor of his parents' requests; Charlotte filed an answer opposing their requests and pointing out that the district court lacked jurisdiction over guardianships.

On June 12, 2017, Joseph filed a motion to compel discovery pursuant to Neb. Ct. R. Disc. § 6-337(3). He alleged that he had served interrogatories, requests for production of documents, and requests for admissions on Charlotte's attorney on March 27, but that most of the answers and responses to his discovery requests were "evasive or incomplete" and should be "treated as a failure to answer." In its June 14 order, the court said the motion to compel would be heard immediately prior to the commencement of trial on July 18, as there was not an earlier date available.

On June 22, 2017, Joseph filed a motion for the appointment of counsel and a motion to continue the trial until such time as discovery is completed. He noted that the motion to compel was set to be heard the same day trial was set, and that did not give him adequate time to prepare for trial. In its June 23 order, the court said both motions would be heard immediately prior to the commencement of trial on July 18, as there was not an earlier date available.

On July 5, 2017, Joseph filed a motion for leave to amend his complaint so that he could request that the court name Philip and Maria temporary guardians in the event that Charlotte is unable to care for Brooklynn. He also wanted to ask the court to change Brooklynn's surname.

The matter came on for hearing on July 18, 2017. Joseph, acting pro se, appeared telephonically. Philip and Maria appeared pro se. Charlotte appeared with counsel. Prior to the start of trial, the court denied Joseph leave to file an amended complaint, and denied his motions for the appointment of counsel, to compel, and to continue trial. The matter then proceeded to trial and testimony was adduced, as will be discussed later in our analysis.

In its order filed on August 2, 2017, the district court awarded legal and physical custody of Brooklynn to Charlotte after finding that she was a fit and proper person to be awarded custody and that the custody award was in the child's best interests. The court ordered that Brooklynn shall not visit Joseph while he is incarcerated, but that visitation at some future date would not be precluded when there was evidence that the child would not be adversely affected. Joseph was awarded telephone parenting time with Brooklynn "at reasonable times as agreed upon by the parties." Finally, the court awarded Philip and Maria grandparent visitation with Brooklynn every other week from Friday at 5:30 p.m. until Sunday at 5 p.m., and also provided them visitation with Brooklynn on Father's Day.

Joseph's "Motion for New Trial and Motion to Alter or Amend" was denied. However, Charlotte's motion to reconsider the length of the grandparent visitation was granted, and the court amended its order to award grandparent visitation every other weekend from Saturday at 5:30 p.m. until Sunday at 5 p.m.; the remainder of the prior order remained in effect.

Joseph, acting pro se, appeals in case No. A-17-920. Philip and Maria, acting pro se, appeal in case No. A-17-944. The two appeals were consolidated for briefing and disposition.

## ASSIGNMENTS OF ERROR

Joseph claims the trial court erred by (1) denying his motion for leave to amend his complaint, (2) denying his motion to compel discovery, (3) denying his motion to continue, (4) finding Charlotte a fit and proper parent for the care and custody of Brooklynn, (5) denying him visitation with Brooklynn while he is incarcerated, and (6) denying his motions for new trial and to alter or amend. Philip and Maria claim the trial court erred by amending its order to reduce their grandparent visitation time.

## STANDARD OF REVIEW

Child custody and parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. See *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

### LEAVE TO AMEND

Permission to amend pleadings is addressed to the discretion of the trial court; absent an abuse of discretion, the trial court's decision will be affirmed. *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014). Generally, leave to amend a party's pleading shall be freely given when justice so requires. *Id*.

Trial took place on July 18, 2017. Prior to proceeding with the trial, the court addressed Joseph's motion for leave to amend the complaint. Joseph explained that he would like to be able to amend his complaint because he wanted his parents to be "standby guardians" in the event "something happened." Joseph also wanted to change Brooklynn's last name. Charlotte's counsel objected, noting that guardianship issues cannot be addressed by the district court. Charlotte did not have an objection to Joseph amending his complaint regarding the name change, but was not prepared to have that issue tried that day. The court overruled Joseph's motion to amend as to both requests. The district court stated it did not have jurisdiction over guardianships. And as for the name change, the court noted the case had been set for trial for some time and an amendment "at this late date" would require a continuance, and it was in the best interests of the child that they proceed on custody.

The district court did not abuse its discretion when it denied Joseph leave to amend his complaint to have his parents named "standby guardians" because, as it noted, the district court does not have jurisdiction over guardianships. See Neb. Rev. Stat. § 24-517(2) (Reissue 2016) (county court shall have "[e]xclusive original jurisdiction in all matters relating to the guardianship of a person, except if a separate juvenile court already has jurisdiction over a child in need of a guardian, concurrent original jurisdiction with the separate juvenile court in such guardianship").

As for leave to amend the complaint to request that Brooklynn's last name be changed, justice did not require that leave be given. The issues currently before the district court were custody, parenting time, and grandparent visitation; all issues completely separate from a name change. While Charlotte's counsel did not have an objection to Joseph amending his complaint for a name change, counsel was not prepared to have the issue tried that day. The district court denied Joseph leave to amend for a name change because he did not file for leave to amend until less than 2 weeks before trial, and as noted by the court, an amendment "at this late date" would require a continuance and it was in the best interests of the child to proceed on custody. Joseph was not prejudiced by the district court's decision. He is not precluded from filing a separate petition to have Brooklynn's surname changed. We find the district court's decision to deny Joseph leave to amend his complaint to request a name change was not an abuse of discretion.

### MOTION TO COMPEL

Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *Breci v. St. Paul Mercury Ins. Co., supra*. The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *Id*.

The court also addressed Joseph's motion to compel on July 18, 2017, prior to proceeding with the trial. Joseph argued that he had sent discovery requests to Charlotte and her attorney, but

most of the answers were evasive or incomplete; Joseph also did not think her answers were truthful.

Charlotte's counsel argued that a lot of Joseph's requests were "not relevant to the issues in the case. A lot of them were posed in a hypothetical nature and . . . some of them were overly burdensome . . . and, again, not relevant" to the sole issue in Joseph's motion, i.e., visitation at the correctional facility. Counsel argued that Joseph is "going to be incarcerated until the minor child is of age . . . he's not seeking custody; he has no basis to seek custody, and so I don't know what investigation he's trying to undertake," so "I think we answered them appropriately for the issues in the case."

The court noted that Joseph attached the responses of Charlotte and her counsel to his motion, which the court had reviewed. The court said it was "hard to see the relevance on some of those. . . . [a]nd . . . there are some which are purely not relevant," and requests for admissions that were hypothetical in nature which were not appropriate for discovery. The court overruled Joseph's motion to compel "for the time being," but said it would reconsider its ruling as to the particular discovery request if it became apparent during the hearing that some issues needed to be addressed through discovery.

Joseph contends that the district court erred by denying his motion to compel discovery. According to Joseph, Charlotte's answers to the discovery requests were "evasive or incomplete, and therefore, should be treated as a failure to answer . . . requiring the lower court to COMPEL her to truthfully and fully answer all of the discovery requests." Brief for appellant at 37.

We have reviewed all the discovery requests and responses attached to Joseph's motion to compel. Charlotte answered each and every interrogatory and request presented to her. Although Joseph may not have liked Charlotte's responses, she nevertheless did respond.

For example, in his interrogatories to Charlotte, Joseph asked for detailed information regarding Brooklynn's examination or treatment with "any dentist, doctor, physician, or other medical practitioner, psychologist, psychiatrist, or other mental counselor, chiropractor, physical therapist, hospital, clinic, or other institution for any injury, illness or disability." Joseph wanted to know the name and address of each provider, the date, nature, and extent of the examination and treatment or care received, and the amounts charged, fully itemized as indicated in any bill. Charlotte responded, "Not relevant and overly burdensome." In his brief on appeal, Joseph claims he has the right to have access to Brooklynn's medical records and that the district court's denial of his motion to compel "further impeded [his] pre-trial investigation that was needed to refute [Charlotte's] Cross-Complaint" for custody. *Id.* at 38. Although Joseph sought to challenge Charlotte's request for custody, as will be noted below, she was the only parent in a position to have custody because Joseph was incarcerated. And the court stated its willingness to reconsider its ruling as to a particular discovery request if it became necessary at trial; which it did not. We find no abuse of discretion in the district court's decision to overrule Joseph's motion to compel discovery.

MOTION TO CONTINUE

An appellate court reviews a judge's ruling on a motion to continue for an abuse of discretion. *Breci v. St. Paul Mercury Ins. Co., supra.*

- 5 -

Joseph's written motion to continue asked for a continuance to allow completion of discovery, noting that his motion to compel was set to be heard on July 18, 2017, the same day as trial. The court also addressed Joseph's motion to continue on July 18, prior to proceeding with the trial, and overruled the motion. Because we have already determined that the district court did not abuse its discretion in overruling Joseph's motion to compel discovery, we likewise find the district court did not abuse its discretion in overruling Joseph's motion to continue so that he could receive the discovery requests prior to trial.

Additionally, at the hearing on the motion to continue, Joseph told the court that part of the reason why he asked for a continuance was that the law library "had been closed a lot lately and that's [his] only source of getting copies and preparing pleadings and doing research" and "they say that they're short-staffed" and he had not had "the full opportunity" to get "exhibits ready and everything." The court said it understood, but was still overruling the motion to continue.

The record shows that since Joseph filed his complaint to modify in January 2017, he filed numerous pleadings and discovery requests. He also filed motions for leave to intervene, asking the court to allow his parents to intervene; a filing that needed to be filed by the grandparents, not Joseph. Other than his general allegations that he did not have sufficient access to the law library, there is nothing to show that his access to, or the conditions of, the library hindered his efforts to pursue his claim for visitation. We find no abuse of discretion in the district court's decision to overrule Joseph's motion to continue.

We note that as part of his claim that the trial court's denial of his motion to continue was unfair, he states he was seeking counsel to represent him and that he had filed a motion for the appointment of counsel, which was overruled by the court. However, we note that a custody and visitation case is not the type of case for which the appointment of counsel is required. See *Payne v. Nebraska Dept. of Corr. Servs.*, 24 Neb. App. 1, 879 N.W.2d 705 (2016) (In civil cases, there is no constitutional or statutory right to appointed counsel; Nebraska law allows for appointment of counsel only when a person's physical liberty may be in jeopardy.) Therefore, the district court did not abuse its discretion in overruling Joseph's motion to appoint counsel. Furthermore, the district court did not abuse its discretion in denying a continuance to allow Joseph to seek counsel. There were nearly 6 months between the time Joseph filed his complaint to modify and the date of trial, which was sufficient time to obtain counsel.

CHILD CUSTODY

Child custody and parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. See *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016).

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

Charlotte testified that Brooklynn has been in her care and control since her birth in December 2011. Charlotte works full time as a "CNA/CMA" and is the sole provider for Brooklynn, receiving only $10 per month from Joseph. When Charlotte works, Brooklynn stays at

home with Charlotte's mother. If Charlotte goes out with friends, she gets a babysitter for Brooklynn.

The district court found that Charlotte was a fit and proper person to be awarded physical and legal custody of Brooklynn, and that it was in the child's best interests that Charlotte be awarded custody.

Joseph argues that Charlotte is not a fit and proper person for custody, and that the court's finding that she is a fit and proper person for custody is based "ONLY upon surmise." Brief for appellant at 32. He claims Charlotte "offered only minimal testimony about her raising the minor child since birth and that she is currently employed . . . which is not clear and convincing evidence to sustain the lower court's [judgment] regarding custody." *Id*. Joseph also states that at trial he and Philip attempted to question Charlotte about neglect of the child, but the lower court sustained her counsel's objections. But Joseph does not assign error to the court's evidentiary ruling. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). He also makes allegations regarding the maternal grandmother's health and ability to care for the child while Charlotte is at work. However, such matters are outside of our record. When reviewing a decision of a lower court, we may consider only evidence included within the record. *State on behalf of Natalya B. & Nikiah A. v. Bishop A.*, 24 Neb. App. 477, 891 N.W.2d 685 (2017). A party's brief may not expand the evidentiary record. *Id*.

While an unwed mother is initially entitled to automatic custody of the child, the issue must ultimately be resolved on the basis of the fitness of the parents and the best interests of the child. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012). In this case, Charlotte is the only parent available to have custody of Brooklynn and there was no evidence that she was unfit. Accordingly, the district court did not abuse its discretion by awarding physical and legal custody of Brooklynn to Charlotte.

VISITS WITH JOSEPH

Charlotte allowed Joseph to have visits with Brooklynn from the time of her birth in December 2011 until his incarceration in August 2012, with the agreement that the visits occurred at his parents' home and that his parents were always present. Joseph thought there were "at least" six visits, but Charlotte said there were "about three or four" visits; they also disagreed about whether any of the visits were overnight visits, Joseph said there were, but Charlotte said no. Charlotte testified that she stopped the visits when Brooklynn was 7 months old because she was told Joseph was taking her other places and away from his parents.

After Joseph's incarceration, Charlotte would not allow him to have visits with Brooklynn because "[t]he penitentiary is not a place for a child." Charlotte was aware that other children visit the penitentiary, that it is supervised, and that there are cameras. Charlotte said that if Joseph was not in the penitentiary, it "would be a different story," but, "It's not [Brooklynn's] fault that [Joseph] did what [he] did. It's not her fault that he's behind bars until she's 20-some years old." Charlotte thinks Brooklynn would have questions about why Joseph is in the penitentiary, and does not think she is old enough to understand. She feels Brooklynn can have an adequate relationship with Joseph through phone calls and would not oppose the phone calls continuing.

Joseph testified that he had not seen Brooklynn since she was less than 1 year old. He said that for his State sentences, his "parole eligibility date" is 2025 and his "jam date" is 2032, and then he has to serve his federal sentence after that.

Joseph testified that while incarcerated, he has spoken to Brooklynn over the telephone whenever she was at Philip and Maria's house; Joseph calls while she is there and they talk for "15 minutes." Joseph said that he and Brooklynn had established a relationship and he would like that to continue. He would also like to be able to see her in the penitentiary and feels it would be in her best interest to get to know him. Joseph thinks that having visits in the penitentiary would have a "positive effect" on Brooklynn.

Philip confirmed that when Brooklynn was at his house, Joseph would call from prison and talk to her and they developed a relationship through telephone communication. Philip would be willing to facilitate visits, and pay for all associated costs, if the court allowed Brooklynn to visit Joseph at the penitentiary. He agreed the penitentiary is a safe environment with cameras in the visiting room, and that there are a lot of other children who visit. Philip also testified that if Brooklynn wanted to leave a visit early, Maria would take her out for a walk while he finished the visit with Joseph.

The district court stated that Brooklynn was born in 2011, and Joseph had been incarcerated since his 2012 convictions for first degree sexual assault, first degree false imprisonment, strangulation, and third degree domestic assault; in addition, he was convicted in federal court on a charge related to the distribution of obscene material. The district court set forth in its order:

> There was no appreciable relationship formed with the child prior to [Joseph's] incarceration, and there has been no contact of any consequence since that time.
>
> There was testimony that children did visit incarcerated parents in the facility holding [Joseph], and the facility has made some accommodations for those visits. However, there was no evidence regarding the process or procedures for those visits and no evidence regarding the impact of the visitation on this particular child. The only evidence in that regard is that of the mother, Charlotte . . . . She testified that the prison was not appropriate for her child and that it was not in the child's best interest that the child visit [Joseph] there.
>
> . . . .
>
> Given the child's age and the lack of contact or relationship between the child and [Joseph] to date, it is reasonable to assume that the child would be negatively impacted by the environment of a correctional facility and that her father is confined to that facility for committing crimes of violence and sexual in nature. The best evidence of that impact is the opinion of the child's mother, who has cared for the child since birth. That is not to say there should be no contact [and he will receive telephone calls during the grandparents' visits with Brooklynn].
>
> . . . .
>
> . . . [I]t is in the best interest of the minor child, considering the factors described above, that the child shall not visit the father while he is incarcerated. This does not preclude visitation at some future date, when there is evidence that the child would not be adversely affected by that visitation and the circumstance of her father's incarceration.

The court-created parenting plan attached to the order states that "[u]nless specifically agreed to by the mother, the minor child shall not be allowed to visit the father at the correctional facility."

Joseph argues that the district court abused its discretion by denying him visitation with Brooklynn at the correctional facility while he is incarcerated. He further argues that the provision of the order stating that visits are not precluded "at some future date, when there is evidence that the child would not be adversely affected" is "completely unfounded" because "the burden is still on the Appellant father to make the appropriate request with evidence that he very likely will not have access to nor even knowledge thereof." Brief for appellant at 20. He further contends that telephone contact "is at best a cold alternative to personal visits." *Id.* at 21.

Incarceration alone is not sufficient justification to deny a prisoner's right to visit his children. See *Nielsen v. Nielsen*, 217 Neb. 34, 348 N.W.2d 416 (1984). However, a parent's rights are not absolute and must yield to the best interests of the child. *Id.*

Neb. Rev. Stat. § 43-2923(6) (Reissue 2016), requires a court, in determining custody and parenting arrangements, to consider certain factors relevant to the best interests of the minor child, including:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
> (c) The general health, welfare, and social behavior of the minor child;
> (d) Credible evidence of abuse inflicted on any family or household member. For purposes of this subdivision, abuse and family or household member shall have the meanings prescribed in section 42-903; and
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

Nebraska appellate courts have addressed visitation with an incarcerated parent outside of a juvenile court setting. We briefly summarize some of those cases.

In *Casper v. Casper*, 198 Neb. 615, 254 N.W.2d 407 (1977), the father had been convicted of murder in the commission of a robbery and was serving a life sentence. The parties were divorced after the husband/father's conviction and sentence. The court awarded custody of the minor children to the mother subject to reasonable rights of visitation by the father. The father applied for an order requiring the mother to make the children available for transportation to the correctional facility. The district court denied the application. On appeal, the Nebraska Supreme Court affirmed because the custodial parent presented testimony concerning the impact visitation with the incarcerated noncustodial parent had on the children. The children had been visiting their father in the correctional facility for more than 1½ years, but the mother stated that after each visitation the children's attitude would deteriorate, and that the children expressed the view that they were not required to obey her or her new husband. After termination of the visits, the children's grades and attitudes improved.

In *Nielsen v. Nielsen, supra*, the father, who had murdered his children's maternal grandparents and was serving two concurrent life sentences for those murders, was granted reasonable visitation rights by the decree dissolving the parties' marriage (the children were 1½

years old and 6 months old at the time). The mother subsequently filed an application to modify the decree and the district court modified visitation finding that visitation with the father at the penitentiary was not in the best interests of the children (who were then nearly 6 and 5 years old). The father appealed. The Supreme Court held that the best interests of children required that there be no visitation with the father at the penitentiary. The evidence showed that with the passage of time the children became aware of the circumstances surrounding their father's incarceration. And, according to the professional opinion in evidence, there would be an adverse psychological impact on the children as a result of visitation at the penitentiary.

In *Bruce v. Bruce*, 11 Neb. App. 548, 656 N.W.2d 281 (2003), the district court dissolved the parties' marriage and ordered the husband/father to have no visitation with the parties' minor children while he remained incarcerated. On appeal, this court found that there was no evidence presented suggesting that visitation would be detrimental to the best interests of the children. The father had previously had visits while incarcerated and at some point, was placed into lockdown, and the only way he could have visitation was in handcuffs and shackles. However, at the time of the divorce hearing, the father no longer had to wear shackles. The mother did not present expert testimony, nor her own testimony that visitation had any adverse impact on the children. The only problem the mother testified about was that she did not think such young children should have to see their father "in handcuffs and shackles," a situation which appeared to no longer be the case at the time of trial. *Id*. at 550, 656 N.W.2d at 283. This court noted that Nebraska appellate courts have never upheld a trial court's denial of visitation where the record did not contain at least minimal evidence to support a determination that such denial was in the best interests of the children. Accordingly, we reversed, and remanded to the district court to enter a visitation order reasonable for the circumstances of the case.

In *Conn v. Conn*, 15 Neb. App. 77, 722 N.W.2d 507 (2006), the district court granted dissolution of the parties' marriage, awarded child custody to the wife, and denied the husband visitation. The husband/father was incarcerated because he had hired people to kill his wife and the child was present at the time of the attempt. On appeal, this court affirmed the denial of visitation.

In the instant case, Joseph had only approximately three to six visits with Brooklynn from the time of her birth in 2011 until the time of his incarceration in 2012. For the next 5 years, until the time of trial, Brooklynn and Joseph only had telephone contact when she was visiting her grandparents every other weekend, and according to Joseph's own testimony, those calls were limited to 15 minutes. As noted by the district court, there was no appreciable relationship formed with Brooklynn prior to Joseph's incarceration, and there had been no contact of any consequence since that time.

The age of the child and the lack of contact with Joseph led the court to say that it was reasonable to assume that the child would be negatively impacted by the environment of a correctional facility and the fact that Joseph had been confined for "committing crimes of violence and sexual in nature." The court found that the best evidence of that impact was Charlotte's opinion. Charlotte's testimony was that "[t]he penitentiary is not a place for a child." Charlotte thinks Brooklynn would have questions about why Joseph is in the penitentiary, and does not think she is old enough to understand. We note that this case is distinguishable from *Bruce v. Bruce,*

*supra*, because unlike that case, Brooklynn has never had prison visits with her father; in that case, visits had been occurring until the father was placed in prison lockdown.

In this case, the district court set forth reasonable concerns for not ordering penitentiary visits for this young child, but did not preclude such visits in the future when the evidence establishes Brooklynn would not be adversely impacted by the visitation and the circumstances of her father's incarceration. Considering the best interest factors and the relevant case law cited above, we cannot say that the district court abused its discretion by denying Joseph visitation at the correctional facility at this time.

### MOTION FOR NEW TRIAL OR TO ALTER OR AMEND

An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. *Knapp v. Ruser*, 297 Neb. 639, 901 N.W.2d 31 (2017).

Joseph argues that the lower court erred by denying his motion for new trial and motion to alter or amend. At the hearing on this motion, Joseph reiterated that he had not been prepared for the trial that was held on July 18, 2017, and that he had sought a continuance because discovery had not been completed, he had limited access to the law library at the penitentiary, and he was seeking the appointment of counsel. He also claims he should have been granted visitation with Brooklynn at the penitentiary.

Neb. Rev. Stat. § 25-1142 (Reissue 2016) sets for the grounds for a new trial. Such grounds include: irregularity in the proceedings of the court; misconduct of the jury or prevailing party; accident or surprise, excessive damages appearing to have been given under the influence of passion or prejudice; error in the assessment of the amount of recovery if the action is upon a contract or for the injury or detention of property; that the verdict, report, or decision is not sustained by sufficient evidence or is contrary to law; newly discovered evidence; and error of law occurring at the trial and excepted to by the party making the application. None of these grounds exist in the instant case and thus the district court did not abuse its discretion in denying Joseph's motion for a new trial.

As for Joseph's motion to alter or amend, he was essentially not happy with the district court's ruling on his motions or the court's decisions regarding custody and visitation. However, we have already reviewed the court's rulings and found no abuse of discretion. Accordingly, we find no abuse of discretion in the district court's decision to deny Joseph's motion to alter or amend.

### GRANDPARENT VISITATION

Determinations concerning grandparent visitation are initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of abuse of the trial judge's discretion. *Hamit v. Hamit*, 271 Neb. 659, 715 N.W.2d 512 (2006).

The testimony at trial was that Charlotte allowed Brooklynn to visit Philip and Maria in August 2012 after Joseph was incarcerated, and that the visits usually occurred every other weekend. Philip testified that those visits stopped within the last year. According to Maria, after Joseph filed his complaint for visitation, Charlotte stopped Brooklynn's visits with Philip and

Maria. Philip testified that when they were having visits with Brooklynn, he and Maria would pick her up mid-afternoon or evening on Saturday and take her home on Sunday afternoon, so "almost" 24 hours. During their time together they developed a relationship. They had a good time and would watch cartoons, go to the park, and walk the dog. In her testimony, Charlotte agreed that Philip and Maria's previous visits with Brooklynn had been every other weekend for about 24 hours, usually from Saturday to Sunday. If the court were to grant grandparent visitation, Charlotte thought that same visitation schedule would be appropriate.

The district court found that there had been clear and convincing evidence of a significant relationship between Brooklynn and Philip and Maria, and that the relationship was beneficial to the child. In its August 2, 2017, order and attached parenting plan, the court awarded Philip and Maria grandparent visitation with Brooklynn every other weekend from Friday at 5:30 p.m. until Sunday at 5 p.m. Charlotte filed a motion to reconsider the length of the grandparent visitation schedule because it was "more equivalent to a non-custodial parent than to grandparents"; she asked the court to reduce the length of the visitation. At the hearing on the matter, Charlotte asked the court to consider amending its order to change the visitation schedule closer to what had been previously occurring. In its August 24 order, the court stated that its "intent was to allow the visitation that had previously been exercised." The court granted Charlotte's motion to reconsider and amended its order to award grandparent visitation every other weekend from Saturday at 5:30 p.m. until Sunday at 5 p.m.

The grandparents argue that the court erred in reducing the amount of grandparent visitation, claiming that before Joseph filed his complaint to modify, Philip and Maria were receiving the amount of visitation as stated in the court's August 2, 2017, order (i.e., every other weekend from Friday to Sunday). Despite their contention, the only evidence presented at trial was that the grandparents were receiving visits every other weekend for approximately 24 hours. We find no abuse of discretion in the court's decision to allow the visitation that had previously been exercised and to amend its order to award grandparent visitation every other weekend from Saturday at 5:30 p.m. until Sunday at 5 p.m.

CONCLUSION

For the reasons stated above, we affirm the decision of the district court in case No. A-17-920 and case No. A-17-944.

AFFIRMED.